RUSH, *Appellant,* v. BROWN *et al.*

1. **Married Woman**: CONTRACT TO CONVEY LAND : SPECIFIC PER-
   FORMANCE.   Under the statutes of Missouri a married woman
   cannot be compelled to specifically perform a contract for the sale
   of her legal estate in land.   ( R. S. 1889, secs. 2396, 2397.)

2. ———— : ———— : ———— : CODE OF PROCEDURE : PETITION : RELIEF.
   A petition alleging a contract by a husband and wife for the con-
   veyance of the latter's land and praying for specific performance
   and general relief cannot be construed as asking for a money
   judgment, and a general demurrer to it is properly sustained.
   ( R. S. 1889, sec. 2039.)

3. **Code of Procedure**: STATEMENT OF CAUSE OF ACTION.   The
   object of the code of procedure is to have the adverse party fully
   advised in each case of the precise complaint he is called upon to
   meet.   It should not be so interpreted as to encourage such
   vagueness and uncertainty in a petition as will leave the defend-
   ant and the court in doubt as to the relief demanded, the mode
   of trial and issues involved in it.

4. ———— : ————.   The general provision permitting the court to
   grant " any relief consistent with the case made by the plaintiff
   and embraced within the issues " (Revised Statutes, 1889, sec.
   2216) has no application where final judgment for defendant has
   been given on demurrer.

## Appeal from Buchanan Circuit Court.

AFFIRMED.

THIS is an appeal from the decision of the circuit
court of Buchanan county, sustaining defendants'
demurrer to plaintiff's amended petition for specific
performance of an agreement to convey the real prop-
erty of respondent Mary L. Brown, a married woman,
held as her legal ( not statutory or separate ) estate.
Defendants are husband and wife.

The material facts on which relief is asked in the
petition are these :   That before the twenty-fifth day of

Rush v. Brown.

February, A. D. 1887, the defendants, and each of them jointly and in the presence of each other, made, constituted and appointed, and by their declaration, by parol, lawfully authorized one Owen, as their agent, to sell for them the parcel of land in controversy, upon certain terms, for the price of twelve thousand dollars ; that on the twenty-fifth day of February, 1887, and while such agency was still in full force, said Owen, in the name of, and as such agent for, said defendants, sold said real estate to plaintiff, upon the terms aforesaid, and plaintiff paid defendants'. said agent the sum of three thousand dollars, and otherwise complied with the terms of sale ; that, at the time of the payment of said three thousand dollars, the said Owen, as the agent of said defendants, delivered to plaintiff a certain memorandum in writing, whereby. the defendants acknowledged the receipt of said sum of three thousand dollars, and declared that the same constituted the cash payment of the purchase price of said real estate that day sold plaintiff, etc., to which memorandum the names of the defendants were signed by said Owen, as aforesaid, their agent ( which memorandum was filed ); that, after such payment of three thousand dollars, the defendants, and each of them, after. being informed of the payment thereof, and the making and signing of said memorandum, each and jointly, by parol, ratified and affirmed the same, yet the defendants, and each of them, ever since have and now refuse to convey the same to plaintiff by deed in proper form.

"Wherefore the plaintiff prays that defendants be ordered by this court to make, execute and deliver to plaintiff their deed in common form with usual covenants of warranty conveying to plaintiff the real estate aforesaid, as by their said note and memorandum herewith filed, they are bound to do, and that plaintiff further recover his costs in this cause laid out and expended, and for all and such other relief as should be granted in the premises."

*James F. Pitt* for appellant.

The record presents for the first time in this state the question of a married woman's liability upon a contract for the sale of her general realty, where her husband joins her in the writing, and where it is wholly executed by the opposite party. It is settled that such engagements, whether in writing or by parol, for purchase or sale, where she has wholly performed, or offers to perform, are not wanting in mutuality, and that specific performance of a contract, as such, will be decreed in her favor. *Neef v. Redmon*, 76 Mo. 195; *Walker v. Owen*, 79 Mo. 563; *Overspeck v. Thiemann*, 92 Mo. 475; *Price v. Hart*, 29 Mo. 171; Herman on Estoppel, secs. 1108, 1109. Upon demurrer the petition is good for specific performance, and, under the prayer for general relief upon an answer asking rescission and offering to refund, a court of equity will declare a lien upon her land for the return of the purchase money, and, in default of payment, order it to be sold. Under no circumstances can she keep the land and the purchase money, too. *Shroyer v. Nickell*, 55 Mo. 264; *Atkinson v. Henry*, 80 Mo. 154; *Danner v. Berthold*, 11 Mo. App. 351. However, what relief would be granted, upon rescission being asked, is not in this case, except for illustration.

*Ryan & Macdonald* for respondents.

(1) At common law a married woman was utterly incapable of making any contract, and she could only convey her legal estate in real property by uniting with her husband in levying a fine; even her deed, although joined in by her husband, was inoperative to pass her title. 3 Cruise, Dig. 153, tit. 35, ch. 10; 2 Inst. 515; 1 Vent. 121a. And in this country the statutes, which provide for the conveyance of her title by deed duly executed by herself and husband, in accordance with their provisions, are simply enlargements of the common

law powers of *femes covert*, and give their deeds, when duly executed and acknowledged, the same power and effect as a fine. *Martin v. Dwelly*, 6 Wend., and cases cited. These statutes have not changed her contractual relations to her real property ; they have simply provided a different method of conveyance more in consonance with the exigencies of commerce and civilization. No agreement that she should attempt to make as to her real property other than in the manner prescribed by the statute would be binding either upon her or her husband. Even an express covenant of husband and wife to convey the wife's legal estate, made during coverture, is void as against the wife and her heirs both at law and in equity. *Martin v. Dwelly*, 6 Wend. 13, and cases cited ; 2 Kent's Com. 140 ; *Butler & Atwater v. Buckingham*, 5 Conn. 492 ; *Martin v. Mitchell*, 2 Jac. & Walk. 424. When a married woman has the legal title to lands in her own right ( as in the case at bar ), or with her husband of an estate in entirety, the only way she can manifest her intention to convey, or her consent to a conveyance of her lands, is by a deed executed in conjunction with her husband and acknowledged as the statute prescribes ; "and she is utterly incapable of binding herself by a contract to convey her lands, either at law or in equity, except by complying with the prescribed statutory forms. An attempted contract on her part is not such a compliance." *Shroyer v. Nickell*, 55 Mo. 264 ; *Atkinson v. Henry*, 80 Mo. 152, and cases cited ; *Rannells v. Gerner*, 80 Mo. 483 ; *Mueller v. Kaessmann*, 84 Mo. 323 ; *Wilson v. Albert*, 89 Mo. 542. And so careful have the courts been to uphold this doctrine in its entirety for the protection of *femes covert*, that they will not attempt to reform the deed of a married woman for a mistake or misdescription, even though all the formal requirements of the statute authorizing her to convey have been strictly complied with. *Meier v. Blume*, 80 Mo. 185

BARCLAY, J.—Under our statutes and the uniform construction of them that has for many years prevailed, a married woman cannot be compelled to specifically perform a contract for the sale of her legal estate in land. R. S. 1889, secs. 2396 and 2397; *Shroyer v. Nickell*, 55 Mo. 264.

So well established is this rule that we are disposed to stop with the briefest announcement of it rather than to hazard obscuring it by elaboration.

II. The prayer of the petition here is for specific performance and general relief. A general demurrer to the petition having been sustained and the case brought here in that shape, the question arises, can plaintiff obtain a reversal because the trial court did not enter judgment against one of the defendants ( the husband ) for the amount of the purchase money paid as alleged ? No prayer for such a recovery is contained in the petition. That is evidently framed with a view to such relief as formerly could have been given only by a court of chancery as distinguished from a court of law.

But it seems to be imagined that any kind of judgment ( whether legal or equitable in nature ), that any particular facts alleged may warrant, should be given, under our code of procedure, in such a case, whether asked or not. We do not assent to that view.

One of the purposes of the code is to substitute specific and concise statements of the actual facts of each controversy for the more general declarations of demands formerly in use in courts of law, and the unnecessarily prolix and elaborate pleadings in chancery. The object in view is to have the defendant fully advised in each case of the precise complaint he is called upon to meet.

In harmony with this object, it is provided that the petition shall contain (among other things) "a demand for the relief to which the plaintiff may suppose himself entitled" and that, "if the recovery of money be

Rush v. Brown.

demanded, the amount thereof shall be stated, or such facts as will enable the defendant and the court to ascertain the amount *demanded.*" R. S. 1889, sec. 2039.

It is obvious that, upon many states of facts presented to a court for action, divers remedies may be applicable, some strictly legal, others, perhaps, equitable in nature. It would be a departure from the true spirit and meaning of the code to require of plaintiff "a plain and concise statement of the facts constituting his cause of action" without requiring (at some stage of the case) a plain statement of the judicial action demanded thereon, for the information of the defendant and of the court.

This is especially true where, as in Missouri, by the terms of the constitution (Const. 1875, art. 2, sec. 28), the right of trial by jury is preserved inviolable in ordinary cases "for the recovery of money only, or of specific real or personal property" (Revised Statutes, 1889, sec. 2131), usually termed actions at law, whereas suits formerly cognizable in chancery may be properly tried without a jury.

With us it is, therefore, often of importance to all concerned to know what relief plaintiff demands, in order to determine the proper constitutional mode of trial. On this account, it is sometimes necessary, in the practical administration of justice, to recur to the inherent distinctions between legal and equitable rights and remedies, and to insist that parties asking aid of the court state the nature of the relief desired, as well as the facts on which they demand it.

It is the duty of all courts to so construe the code as "to secure parties from being misled." R. S. 1889, sec. 2117. But it is obvious that parties would often be misled as to the real nature and issues of the case if an ordinary judgment at law might be rendered by the court on a petition praying only equitable relief, without other notice of such legal demand than the supposed case in equity incidentally disclosed.

The code, no doubt, intended to abolish many distinctions, with respect to forms of statement, between actions at law and suits in equity, and to empower the same court (if necessary in the same proceeding) to adjudicate legal and equitable rights and apply thereto legal and equitable remedies, but it does not sanction, and should not be so interpreted as to encourage, such vagueness and uncertainty in the petition as would leave the adverse party and the court in doubt as to the relief demanded, and hence as to the mode of trial, and as to the issues which would be material and decisive in it. *Humphreys v. Milling Co.* (1889), 98 Mo. 542.

Moreover, we review in this court only such objections to proceedings as have been expressly decided by the trial court. R. S. 1889, sec. 2302.

Parties who wish to change or enlarge their demand for relief should do so by amendment or otherwise while the cause is before the trial court, at least in those instances where the case goes off upon demurrer, for the general provision permitting the court to grant "any relief consistent with the case made by the plaintiff and embraced within the issues" (Revised Statutes, 1889, sec. 2216) can have no proper application where final judgment for defendant has been reached on demurrer. In that event the prayer for general relief, supplemental to one for specific performance, cannot, in view of section 2039 (Revised Statutes, 1889), be construed as a prayer for a money judgment.

The judgment of the trial court was correct and is affirmed, with the concurrence of all the members of the court.