SHAFFER v. KUGLER, *Plaintiff in Error.*

IN BANC.

Husband and Wife: CONVEYANCE: POST-NUPTIAL AGREEMENT: EQUITY. A post-nuptial agreement between a husband and wife for the conveyance to him of her general fee-simple estate in lands made upon a sufficient consideration is not only void at law, but is not enforceable in equity against the wife or her heirs.

*Appeal from Clay Circuit Court.*—HON. J. M. SANDUSKY, Judge.

AFFIRMED.

*Crittenden & Stiles* and *Samuel Hardwicke* for plaintiff in error.

(1) "A deed directly from the husband to the wife was void at law, but it will be upheld in equity as a defective conveyance, if the wife could show herself to be meritorious." *Walton v. Parish,* 96 N. C. 259. (2) In a great many cases it is recognized that the husband may owe the wife a debt—or *vice versa*—and when such debts have been paid to husband or wife, in preference to other creditors, it is no fraud on such other creditors. *French v. Molley,* 63 Maine, 326 ; *Claflin v. Welch,* 44 Barb. 271 ; *Wilson v. Shepperd,* 28 Ala. 623 ; *Schaffner v. Rewler,* 37 Barb. 44 ; *Monroe v. May,* 9 Kan. 466. (3) But can this transaction be sustained in a court of equity ? *Livingston v. Livingston,* 2 J. C. 537 ; 2 Story's Eq., sec. 1372 ; *Hendricks v. Isaacs,* 117 N. Y. 411 ; *Wilcox v. Todd,* 64 Mo. 388 ; *Terry v. Wilson,* 63 Mo. 493 ; *Chapman v. McGrath,* 77 Mo. 38 ; *Clark v. Clark,* 86 Mo. 123 ; *Dameron v. Jamison,* 4 Mo. App. 299. (4) That this transaction would be upheld, and

relief granted in a court of equity between other parties, than the husband and wife, is well-settled by numerous adjudications of this court. *Halsa v. Halsa*, 8 Mo. 303 ; *Rumbolds v. Parr*, 51 Mo. 195 ; *Dozier v. Matson*, 94 Mo. 328 ; *Farrar v. Patton*, 27 Mo. 81 ; *Neal v. Neal*, 9 Wall. 1.

*L. C. Slavens* for defendant in error.

(1) This court has so often held that in this state a married woman cannot thus contract with reference to her general or statutory real estate, but can only bind her separate estate in equity by such a contract, that I forbear to do more than cite a few of its decisions upon that question : *Shroyer v. Nickell*, 55 Mo. 264 ; *Hord v. Taubman*, 79 Mo. 101 ; *Craig v. Van Bebber*, 100 Mo. 584 ; *Gwin v. Smur*, 101 Mo. 550 ; *Rush v. Brown*, 101 Mo. 586. (2) But even if the alleged agreement were not void for the above reasons, we submit : *First.* That it is void as against the statute of frauds ; *second*, that it is too uncertain and indefinite to be enforced ; *third*, that the evidence fails to show that it was ever made ; *fourth*, that the evidence fails to show that defendant ever performed what he alleges to be the agreement—fails to show the nature, extent or value of any improvement ever made by him upon the land, or that what he did, if anything, was in pursuance of any such agreement, or was a performance of it on his part. Some three years after his wife's death, defendant admitted to John T. Wright, one of her heirs, that her deed to him, defendant, was void, but claimed he had a dowry or life-estate, and proposed to sell that interest or buy the interest of the heirs. He then said that the land belonged to "you heirs," and did not then pretend there was any such agreement as stated in the answer.

BRACE, J.—This is an action in ejectment for a tract of land in Clay county. Martha A. Kugler,

deceased, who was the wife of the defendant, is the common source of title. She became seized in fee-simple of the forty-acre tract of which the land in controversy (being about twenty-five acres) formed a part, in 1864, and died in 1882. The plaintiff, since her death and before the bringing of this suit, acquired by quitclaim deeds the title of her heirs at law to the land in dispute. The defendant and the said Martha inter-married in 1869; at that time he owned forty acres of land in Caldwell county. After their marriage defend-ant sold his land in Caldwell county, and they moved upon the forty-acre tract of the wife in Clay county, improved it and made it their home until her death, except about fifteen acres which seems to have been disposed of to other parties during the marriage.

On the twenty-fourth of November, 1879, the said Martha A. appeared before a notary public with a deed signed with her name and mark, and dated November 15, 1879, purporting for the consideration of $300 to convey the premises in controversy to the defendant, which she acknowledged, in the words of the certificate, "to be her act and deed for the purposes therein mentioned;" after acknowledging it thus, she took it home, and there it seems to have remained until the twenty-seventh of May, 1882, three days after the death of Mrs. Kugler, when it was filed for record. The defendant's claim is that said deed was made in pursuance of a parol agree-ment between him and his wife entered into after marriage by which she agreed, if he would sell his land, move onto her land and with the proceeds of his land improve hers and make it their home, that after her death he should have her land absolutely for his own use; that he performed his part of the agreement; and he prays that this contract may be specifically enforced as against the plaintiff by vesting in him the legal title to the premises.

In support of this contention, and as proof of this agreement, the defendant introduced in evidence the

deed of his wife and the acknowledgments and declarations made by Mrs. Kugler during the marriage, before and after she made the acknowledgment. The substance of what she said before was "that Mr. Kugler had sold his land and they had used the money; that he had lived with her on her land and improved it, and she proposed for him to have it after her death." "That she intended to deed the land to Mr. Kugler if he would furnish money to build the house, and means to live on ; and afterwards that "she had deeded it to him ; " "that everything was fixed between her and Kugler; that there was but two of them and it was all Kugler's."

The question of the value of the improvements and rents, and of the amount of money received by the defendant for that part of the forty disposed of during the marriage, was not gone into on the trial below, the defendant waiving any right he may have for any accounting to determine what, if anything, he should have for money spent or improvements made on the land. On this state of case the court held that, while a defective deed from a person not under disability will amount in effect to a contract to convey, the defective deed of a married woman cannot have this effect because of her inability to contract. The deed of Martha A. Kugler to her husband was, therefore, void, and can afford no basis for equitable relief, neither can a verbal contract or improvements made under a verbal contract. Her title can only pass to her legal real estate by deed conforming in all respects to the statute, and so holding found for the plaintiff, and rendered judgment accordingly, from which the defendant appeals.

I. This opinion will be limited to the single question upon which it turned in the circuit court. In order to secure a reversal of the judgment defendant must successfully maintain the proposition that a postnuptial agreement between husband and wife for the conveyance to him of *her general fee-simple estate* in lands made upon sufficient consideration, though void at

law, will be enforced in a court of equity *against the wife and her heirs.* This proposition the learned counsel for defendant undertake to maintain in the face of the doctrine laid down and repeatedly approved in this state, that a *feme covert* except as to her *separate estate* "is utterly incapable of binding herself by a contract to convey her land, either at law or in equity, except by compliance with the prescribed statutory forms." *Shroyer v. Nickell,* 55 Mo. 264; *Whiteley v. Stewart,* 63 Mo. 360; *Pearl v. Hervey,* 70 Mo. 160; *Dameron v. Jameson,* 71 Mo. 97; *Hord v. Taubman,* 79 Mo. 101; *Walker v. Owen,* 79 Mo. 563; *Gwin v. Smurr,* 101 Mo. 551; *Rush v. Brown,* 101 Mo. 586.

The argument seems to proceed upon the theory that this doctrine is founded upon the oneness of the husband and wife in the marital relation at common law, in consequence of which they could make no binding individual contract with each other; but that it ought not to obtain in courts of equity in regard to contracts between husband and wife wherein either has executed his or her part of it, and the other has received a valuable and sufficient consideration for the contract, and we are cited to many cases in which such courts have ignored this common-law idea of absolute unity, and have sustained post-nuptial settlements and contracts of the husband made with, or for the benefit of, the wife upon sufficient consideration, but these do not reach the case in hand.

The incapacity of the wife to contract does not rest alone upon the unity of the husband and wife in the marital relation, but upon the further maxim that the wife is *sub potestate viri.* Her acts *ex contractu* during the marital relation are presumed to be the fruits of his power and influence, and not of her own volition; they may bind him, but cannot bind her, only so far as this disability has been removed by statute. The husband rests under no such incapacity; he has power to bind himself, and courts of equity in many instances

Shaffer v. Kugler.

enforce his contracts for her benefit founded upon a sufficient consideration. A mode has been provided by statute by which the wife may dispose of or incumber her real estate. She has no power directly or indirectly to charge or dispose of it in any other manner, and courts of equity have never enforced *quasi* contracts by which married women attempted to do so, in any case except where the *feme covert* was seized of a separate estate, over which (it being originally a creature of equity) such courts have always claimed the right to exercise jurisdiction *ex equo et bono*, and in respect of which, holding that she was a *feme sole*, her contracts have been by them enforced, even in favor of the husband, when in equity and good conscience they ought to be.

But courts of equity have never undertaken to enforce the wife's executory contracts with the husband or anybody else in regard to her general legal estate in lands, nor could they, except in jurisdictions where as to such estate she is by statute authorized to contract as a *feme sole*, and where she might be treated in respect thereof the same as if she were seized of a technical separate estate, as previously recognized by courts of chancery. Under such a statute enacted in 1849 in New York it has been held by the court of appeals of that state that, while the incapacity of the wife to convey has been removed, the incapacity of the husband to take has not, and that a voluntary deed from the wife to the husband is void; but that court seems to hold, in view of this legislation, that her contract with him in respect of her real estate, if just and fair and founded upon an executed, adequate consideration, might be charged upon her real estate upon the same equitable principles that would obtain, if she were seized of a technical equitable separate estate therein. *Yale v. Dederer*, 18 N. Y. 265; *White v. Wager*, 25 N. Y. 328; *Winans v. Peebles*, 32 N. Y. 423; *Hendricks v. Isaacs*, 117 N. Y. 411. And in other states where similar statutes

have been enacted, the wife's statutory separate estate seems to be placed on the same footing as her technical, equitable, separate estate. *Johnson v. Cummins*, 16 N. J. Eq. 97; *Dreutzer v. Lawrence*, 58 Wis. 594; *Love v. Watkins*, 40 Cal. 547; *Spafford v. Warren*, 47 Iowa, 47. But for the purpose of this case it is not necessary to pursue the investigation further in this direction. That prior to such legislation the covenant of a married woman, except as to her technical, equitable, separate estate, was absolutely void, and afforded no basis for equitable relief wherever the common law prevailed, is made manifest in *Martin v. Dwelly*, 6 Wendell, 9; *Butler v. Buckingham*, 5 Days' Cases (Conn.) 492; 2 Kent, p. 168; 1 Cord on Rights of Married Women, sec. 428; *Cahill v. Cahill*, 8 L. R. Appeal Cases, 420, and a host of other authorities that might be cited.

At the time the contract in this case is alleged to have been made, and the deed executed, there was no statute in this state authorizing a married woman to contract, as a *feme sole*, or to convey or bind her real estate, except by will ( R. S. 1879, sec. 3961 ) or by deed, or power of attorney made in conjunction with her husband, and by her duly acknowledged upon a privy examination separate and apart from him. R. S. 1879, secs. 669, 670, 681. With these exceptions her power over her real estate was just the same as at common law. We have examined all the cases cited by counsel, and many others in which courts of equity have passed upon the property rights and contracts of husband and wife, but have not found, and do not think a well-considered case can be found, in which it is held that a post-nuptial contract could be enforced in favor of the husband against the wife in respect of her real estate, unless she was possessed of a separate estate therein, either technical or statutory.

The case of *Livingston v. Livingston*, 2 Johnson's Chan. 537, on which defendant seems mainly to rely, gives no support to his contention. In that case "a

husband and wife agreed by parol that he should purchase a lot in her name and build a house thereon, and that he should be reimbursed the cost thereof out of the proceeds of another house and lot of which she was seized, which should be sold for that purpose; and the husband having executed the agreement on his part, the contract failed by the sudden death of the wife, who left infant children to whom the legal estate in both lots descended. The agreement was decreed to be carried into effect, and the lot was ordered to be sold, and a conveyance executed by the infant trustees by their guardian *ad litem;* * * * and the plaintiff, the father, to be reimbursed his advances out of the money arising from the sale."

Counsel say in regard to this case, "this property was conveyed to the wife before marriage; of course it was her general property." This is a palpable *non sequitur;* that it was not her general property is manifest: *First,* by the statement of the case in which it is said she was seized in fee "*in her own right;*" while the words "in her own right" may not sufficiently define, it may well be used to describe the wife's separate estate in equity. Schouler's Dom. Rel., sec. 103; *Logan v. Hall,* 19 Iowa, 495. *Second,* by the language used in the opinion and the authorities cited in support of it. It is said in the opinion: "I entertain no doubt of the fairness and equity of the agreement between the plaintiff and his late wife, as stated in the bill, and proved by one of the witnesses. A husband and wife may contract for a *bona fide* and valuable consideration for a transfer of property from him to her." It was admitted as a clear point in the case of *Lady Arundell v. Phipps,* 10 Vesey, 146–149, that a married woman *having separate property may* purchase by the sale of it other property, even of her husband, and have it limited to her separate use. Other authorities to the same point are referred to by Atherby (treatise

on marriage settlements, pp. 160, 161), who considers the point supported by reason, as well as by authority. *Third.* That when cited on this point by the great chancellor who decided the case, and other text-writers, it is when treating of the power of the wife in respect of her separate estate, and as applicable thereto. 2 Kent's Com. 164, 167; Stewart on Husband & Wife, sec. 42; 2 Story's Equity [13 Ed.] sec. 1372.

The defendant's construction receives no support from the case of *Turner v. Shaw*, 96 Mo. 27; for in that case whatever efficacy is attributed to the wife's deed to her husband is based specifically upon the ground of her separate estate in the property.

It follows from what has been said that the contract of Mrs. Kugler with her husband attempted to be set up as a defense to plaintiff's action was absolutely void, and cannot afford a basis for the equitable relief prayed for by the defendant, for the reason that she was then *sub potestate viri*, and had no separate estate in the property; neither can the alleged parol contract between them in execution of which it may have been made. This conclusion renders it unnecessary to notice the other features of the case. The judgment of the circuit court is affirmed. All concur, except SHERWOOD, C. J., who dissents.