. HALFERTY v. SCEARCE, *Appellant.*

Division Two, October 7, 1896.

1. **Deed**: PAROL EVIDENCE: DOWER. Oral evidence is not competent to show that the consideration for a conveyance made by a husband to his wife, which recited that it was made in consideration of the relinquishment by the wife of dower rights in lands owned by the husband, also included the relinquishment of her dower in land which the husband had previously sold and conveyed.

2. **Widow**: CONTRACT FOR JOINTURE: DOWER. A widow is not required to renounce a contract for jointure by which she relinquished her dower right in lands then owned by the husband, in order to enable her to claim dower in other lands which he had previously sold and conveyed.

*Appeal from Clinton Circuit Court.*—WILLIAM HENRY, ESQ., Special Judge.

AFFIRMED.

*M. B. Riley* for appellant.

(1) Parol evidence is admissible to show the actual consideration for a deed. 17 Am. and Eng. Ency. of Law, page 438, and cases cited. (2) Plaintiff not having renounced the settlement made upon her by her husband, she could not claim under him as doweress. R. S. 1889, sec. 4530.

*H. T. Herndon* for respondent.

(1) The deed from Solomon Halferty to plaintiff will not operate to bar plaintiff's claim by virtue of section 4529, Revised Statutes, 1889. Because not made before marriage and not expressed to be in release and satisfaction of dower. Section 4530, Revised Statutes, 1889, on which defendant relied, reads as follows: "Renunciation of jointure. If any deed or conveyance, agreement or contract for jointure be made after marriage, or be made before marriage and during the infancy of the wife, in either case the widow may, at her election, renounce her dower and have jointure, and have dower," etc. (2) If the deed on which defendant relied to bar this action will operate as a jointure which the widow is required to announce in order to have her dower under the first section of the dower act, it must be by virtue of the section above set out, as construed

by the supreme court in the case of *Logan v. Philips*, 18 Mo. 22.   (3)   But in order for it to have this effect it must be shown to have been made and accepted in lieu of dower in the land in question, as well as in other lands.   (4)   A provision in lieu of dower made before marriage will bar the widow's dower in all the lands of her husband by force of section 4529, Revised Statutes, 1889.   (5)   In such case it is not a contract for a provision, but a provision made, while the doctrine of equitable jointure proceeds upon the idea of a contract on the part of the wife to accept a certain provision in lieu of dower.   Washburn on Real Property [4 Ed.], page 319.   (6)   The deed from Solomon Halferty to plaintiff was void as a contract until she accepted its benefits after coverture; it then became valid and binding as a contract between them. *Roberts v. Walker*, 82 Mo. 200.   (7)   The widow's dower whether we call it an estate or a right, is not indivisible so far as her election is concerned.   *Horney v. Casey*, 21 Mo. 545; *Crecelius v. Horst*, 5 Mo. App. 419.

BURGESS, J.—Action by plaintiff who is the widow of Solomon Halferty, deceased, for the admeasurement of dower in a tract of land containing twenty-one and sixty-nine hundredths acres, in Clinton county, Missouri, of which her husband was seized of an estate of inheritance during the existence of their marriage.

The defense set up in the answer was, that on the twenty-ninth day of August, 1885, during the existence of the marriage relation between plaintiff and said Solomon Halferty, they entered into an agreement, whereby, in consideration of the relinquishment by her of all her dower rights in and to the lands of said Solomon Halferty, he, by deed of general warranty, conveyed to her eighty-two acres of land being in said

county; and denying her right to dower in the land described in her petition.

There was judgment for plaintiff and defendant appealed.

Solomon Halferty deeded the land in which plaintiff claims dower to the defendant on the fourth day of October, 1884, but plaintiff who was then his wife did not sign or join in that deed.   Defendant has been in possession of the land ever since his purchase.

On August 29, 1885, Solomon Halferty, by deed of general warranty, conveyed to plaintiff and her children therein named eighty-two acres of land, in lieu of her dower right in his land.   The deed contains the following provisions, to wit:

"Witnesseth that the said party of the first part, for and in consideration of the relinquishment of dower by said party of the second part in and to all lands of said first party, and for the further consideration of natural love and affection which said first party bears said second and third parties, does by these presents grant, bargain, and sell, convey and confirm unto said second and third parties, by the terms hereinafter set forth, the following described real estate, lying, being, and situated in the county of Clinton and state of Missouri, to wit:

"All that portion of the east half of the northwest quarter of section 16 which lies south of a hedge fence thereon, being about forty-two acres, more or less; also, the north half of the northeast quarter of the southwest quarter of section 16, and twenty-five acres off the south side of the east half of the northwest quarter of section 6, except therefrom five acres in the southeast corner thereof belonging to W. H. Hawkins, all of said land lying in township 55 of range 32, containing in the aggregate eighty-two acres, more or less.

"To have and to hold the above described premises, with all and singular the rights, privileges, appurtenances and immunities thereto belonging or in any wise appertaining unto the said party of the second part for and during her natural life, then unto the said parties of the third part and unto their heirs and assigns forever; he, the said party of the first part hereby covenanting that he is lawfully seized of an indefeasible estate in fee in the premises herein conveyed, that he has good right to convey the same, that said premises are free and clear of any incumbrances done or suffered by him or those under whom he claims, and that he will warrant and defend the title unto the said second and third parties and unto their assigns forever."

It is claimed by defendant that the land conveyed by this deed was in full of plaintiff's inchoate right to dower in all of Solomon Halferty's land, and in support of this contention defendant offered verbal testimony tending to show that such was the agreement between plaintiff and her husband at the time of its execution, but on objection by plaintiff the evidence was excluded by the court, and defendant saved his exceptions.

Solomon Halferty died in March, 1890.

Defendant's first contention is that the court committed error in excluding the verbal evidence offered by him tending to show that at the time of the execution of the deed from Solomon Halferty to plaintiff and her children, it was agreed between her and her husband that the life interest in the land conveyed to her, was not only in lieu of but in full of any inchoate right of dower in all the land which he then owned, but also in the land in question which he had theretofore sold and conveyed to defendant.

It may be conceded that parol evidence is admissible for the purpose of contradicting a receipt, or the recitals in a deed as to the payment of the purchase

money, or the amount thereof, but such evidence is not permissible for the purpose of adding to, enlarging upon, varying or ingrafting upon a deed matters not mentioned therein and having no connection therewith.

The evidence offered contradicted the recital in the deed, that it was in consideration of the relinquishment of dower by plaintiff in and to all the lands which her husband then owned, in that it showed that she also relinquished her dower in the land in controversy, which he had several months theretofore conveyed to the defendant, and in which he then had no interest, or estate. The evidence was clearly inadmissible and it was correctly so held.

A final contention is that as plaintiff had not renounced the settlement, as it is called, made upon her by her husband, she could not claim under him as doweress. Sec. 4530, R. S. 1889.

If this were a suit by the widow for dower in land which her husband owned at the time of the execution of the deed to her, there might be some force in this contention, but as the land in question had already been conveyed by him, and the deed was in consideration of the relinquishment of his wife's inchoate right to dower in land which he then owned, the statute has no application, and her failure to renounce the provisions of the deed to her, was no bar to her right for dower in the land described in the petition. The judgment is affirmed. GANTT, P. J., and SHERWOOD, J., concur.

SHERWOOD, J. (concurring)—Nota Bene.—I improve this occasion to say that the above case necessarily gives tacit recognition to the idea that a wife possessed of a mere dower right in her husband's land may so contract with him as to make valid a conveyance to her of a tract of his land in consideration

VOL. 135 mo—28

of the concurrent relinquishment by her of her dower right in another tract of her husband's land; such relinquishment constituting a consideration for such conveyance to her.    This has been the settled law of this state ever since *Caldwell v. Bower*, 17 Mo. 564. See, also, *Woodson v. Pool*, 19 Mo. 340.    To the same effect is *Novelty Co. v. Pratt*, 21 Mo. App. 171.    Elsewhere this doctrine finds ample support.    *Bullard v. Briggs*, 7 Pick. 533, and cases cited; *Garlick v. Strong*, 3 Paige, Ch. 440; *William and Mary College v. Powell*, 12 Gratt. 372; *Clerk v. Nettleship*, 2 Levinz, 148.

It seems unnecessary to state that in none of the instances mentioned, did the *femme* have an *equitable separate estate* when contracting with her husband, nor, according to the authorities, was such an estate necessary as a basis on which the contract between husband and wife was to rest.

The contract was good in *equity*, even though it may have been void in *law;* and this distinction is steadily maintained in numerous cases.

Thus in *Livingston v. Livingston*, 2 Johns. Ch. 537, a wife who at the time of her marriage was *"seized in fee in her own right"* of a house and lot in the city of New York, and being thus seized, she agreed with her husband by *parol*, that he should purchase a lot in her name and build a house thereon, and that he should be reimbursed the cost thereof out of the proceeds of the house and lot first mentioned, which should be sold for that purpose.    The husband having done as he agreed, and his agreement being fully executed, the sudden death of the wife prevented the contract from being fulfilled on her part; whereupon, the husband applied for equitable relief as against the children and heirs of his wife, and specific performance of the contract was decreed by Chancellor KENT.    This decree was entered in 1817, in Sep-

tember, or probably somewhat later. Of this case the learned chancellor in his Commentaries thus speaks:

"A wife may also contract with her husband, even by parol, after marriage, for a transfer of property from him to her, or to trustees for her, provided it be for a *bona fide* and valuable consideration; and she may have that property limited to her separate use. This was so held in the case of *Livingston v. Livingston*, and as the wife died, in that case, after the contract had been executed on the part of the husband, and before it had been executed on the part of the wife, the infant children of the wife were directed to convey, as infant trustees, by their guardian, the lands which their mother, by agreement with her husband, had contracted to sell." 2 Kent [14 Ed.], *166.

It will have been noted that the learned chancellor gives no hint or intimation that the wife of Livingston had any *equitable separate estate*, in her house and lot of which she was seized.

In Virginia in the same year (1817), the case of *Gosden v. Tucker's Heirs*, 6 Munf. 1, was pending, and was decided October 15 of that year. There the wife also was *"seized in fee in her own right"* of certain land, and it was verbally agreed between her and her husband that in consideration of her joining him in a sale and conveyance of a portion of her land, he would purchase other lands, build thereon, or convey the same to her, and thereupon she joined in the deed, and he bought a tract of ground and built thereon, but died without having performed his agreement; it was ruled that she was entitled to specific performance against the heirs. This case also presents the same features in effect as that of *Livingston v. Livingston, supra*, and in *Gosden's* case as in that, though able lawyers were opposing counsel (Wickham for plaintiff and Leigh for defendants), Wickham never seems to have thought for

a moment that a wife would have to have an *equitable separate estate* in order to validly contract with her husband, but placed the right of plaintiff to equitable relief on the ground, that a "court of equity will enforce a contract between husband and wife, founded on the consideration of her relinquishing her right to dower, or joining in a sale of her real property, in like manner as if she were a *feme sole.* * * * The court will set up the contract though void at law."

The coincidence of two such able courts, far separated, arriving at similar conclusions just about the same time, is certainly not a little remarkable. Those cases mark with prominence the idea constantly entertained by courts of equity and more and more given expansion and development as the years go by, of the *duality* of husband and wife wherever equitable relief is sought respecting their contracts *inter sese.*

In the somewhat recent case of *Wormley v. Wormley*, 98 Ill. 544, where a purchaser of land procured the title to be made to his wife, under an agreement on the part of the wife that she would convey to the husband when requested so to do, it was held the contract on the part of the wife to make a conveyance, was of such a character that it could be enforced in a court of equity, at the suit of the husband. So, in *Holloway v. Holloway*, 103 Mo. 274, decided October term, 1890, the wife only had a *homestead*, her *absolute* property. Her husband was indebted to a bank in the sum of $4,500. To secure the debt due the bank he made a deed of trust upon his De Kalb county land and also upon his wife's thirteen acres of land in Pleasant Hill, his wife's homestead. His wife refused to join in this deed except and until he had agreed with her, to assign to her a note for $3,200 given by a third party to her husband and secured by a deed of trust on the payor's land. This note was then assigned to the wife in

order to secure his wife against any loss in consequence of the deed of trust executed on her homestead, and this *contract* between husband and wife was held a valid one; certainly there was no *separate equitable estate* there belonging to the wife.

In *Kesner v. Trigg*, 98 U. S. 50, it was ruled that a wife possessed of an estate *simply inherited* from her father might make a parol postnuptial contract with her husband for an exchange of lands and such parol contract would be enforced if upon sufficient consideration, when wholly or partly executed, and for this position *Gosden v. Tucker, Livingston v. Livingston, supra*, and other cases, are cited, as well as Cord on Married Women, sections 36, 37, now section 30e, page 85 [2 Ed.].

Assuredly the wife had no equitable separate estate in *that* case.

*McCann v. Letcher*, 8 B. Mon. 320, is another instance where a wife, owner of land by *inheritance* made a contract with her husband, which was enforced in equity.

In the *Shaffer-Kugler* case, 107 Mo. 58, the wife's property consisted of a forty acre tract of unimproved timber land in Clay county, which she had acquired by ordinary deed in 1864, and prior to her marriage with Kugler, who owned a little improved farm in Caldwell county. In these circumstances, Kugler and and his wife contracted together that if the husband would sell his Caldwell farm and move on, settle, and improve his wife's land, so as to make it habitable, he should enjoy the land with her, and after her death he should own the land in fee; his wife to carry this agreement into execution by a will to that effect. As agreed, so done; the husband sold his Caldwell land, the couple removed to Clay, where the proceeds of his former farm were expended in improving the farm

of his wife, building a house thereon, etc., and there the couple remained until the death of the wife in 1882. The wife, prior to her death, proceeded to execute a will as agreed upon, but was persuaded by a neighbor to execute a warranty deed to her husband, which she did, and acknowledged in 1879. Whether this deed was ever delivered does not appear.

Upon this state of facts this court held that inasmuch as the wife was only seized of an *ordinary fee simple title* to the land, the contract was *wholly void*, and equity could afford no relief. Under the authorities cited, it was quite immaterial whether Mrs. Kugler ever made a will in favor of, or delivered a deed to, her husband, because the contract being executed on his part, equity would do the rest by compelling specific performance on the part of the heirs of his wife, as was done in *Livingston's* case. But it was seen in the *Shaffer-Kugler* case, that unless *Livingston's* case could be distinguished from *it*, that the conclusion reached in that case, to wit, that equitable relief must be granted and specific performance in behalf of the husband decreed, *must needs follow*, and so in order to break the force of the decision in *Livingston's* case, it was boldly declared and put down in cold print that the words "seized in fee *in her own right*," though contained in a deed executed to the wife prior to her marriage, created in her an *equitable separate estate*, and in support of this remarkable deliverance *Logan v. Hall*, 19 Iowa, 495, and Schouler, Domestic Relations, section 103, are cited, neither of which in the slightest degree give any countenance to the idea that *such* words would create a separate estate in equity; *and no authority can be found that does!*

On the contrary thereof the supreme court of Massachusetts has expressly ruled that a conveyance of land to a married woman "*in her own right*," is not a

conveyance to her "sole and separate use." *Merrill v. Bullock*, 105 Mass. 486. Besides, this court in *Hart v. Leete*, 104 Mo. *loc. cit.* 328 (decided at the April term, 1891), ruled that the words in the will of a testator *"in their own rights,"* did not create a separate estate in his two daughters. And this upon the obvious ground, as say all the authorities, that the purpose to create an equitable estate, *must clearly appear beyond a reasonable doubt;* otherwise the husband will retain his ordinary marital rights over his wife's property. 2 Sto. Eq., sec. 1381. This view was reiterated in *Richardson v. DeGiverville*, 107 Mo. *loc. cit.* 432, decided at the October term, 1891. Now, the *Shaffer-Kugler* case was decided at the *same* term and is reported in the same volume, as the last named case.

So it would seem that when the opinion in the *Shaffer-Kugler* case was written, as well as when the *Richardson-DeGiverville* opinion was prepared, the judicial memory must have *"pulled its picket pin, and strayed out on the range."*

I have made the foregoing observations because I filed an opinion in the *Shaffer-Kugler* case, which has remained unpublished, and because I deemed the present a fitting opportunity to state the views which I entertained in, and of, that case. And I conclude by saying that whenever you admit that a wife who has a contingent right of dower, or a homestead or title to land by inheritance, can validly contract in equity, with her husband in regard to such property, and this you must admit, according to the authorities, you thereby admit that the *Shaffer-Kugler* case *is not law*.