NEVILLE, Respondent, v. HUGHES, Appellant.

**St. Louis Court of Appeals, February 16, 1904.**

1. **COVENANTS: Dependent and Independent.** In an action by the vendee for breach of warranty of title to chattels, a covenant in the contract of sale, binding plaintiff to do certain things, which did not go to the entire consideration and was to be performed at a different time from that of the transfer of title, was an independent covenant, and it was not necessary to plead and prove performance of it in order to recover.

2. **VENDOR AND VENDEE: Warranty of Title: Notice to Vendee of Defect.** Previous knowledge by vendee of a defect in the title to the property purchased, is no defense to an action on a covenant warranting the title.

3. **EVIDENCE: Parol Testimony to Vary Written Contract.** Parol testimony is not admissible to enlarge or vary the terms of a written contract which is complete within itself.

4. ———: ———: **Consideration.** Nor is it permissible, under the mask of establishing an additional consideration, to show that a party to it undertook obligations different from those expressed in the contract.

Appeal from Lawrence Circuit Court.—*Hon. H. C. Pepper*, Judge.

AFFIRMED.

*Jas. R. Vaughan* for appellant.

(1) Before a party can recover upon a contract he must show that he has himself complied with it. Where an action for breach of contract has been brought it is essential that the pleading aver performance, and that the pleader prove it, and no recovery can be had where the evidence shows that the pleader was the first to break the contract, which is the identical case here upon the part of the plaintiff. Smith v. Keith & Perry Coal Co., 36 Mo. App. 583; Doyle v. Turpin, 57 Mo. App. 84.

(2)   Respondent by his own default rendered it impossible for appellant to make good his guaranty, and hence he was not entitled to recover.   Seaman v. Paddock, 55 Mo. App. 296; Jones v. Walker, 13 B. Monroe 163.   (3) He who obligates himself to do the very act which is to make his title good, and then fails to comply with such obligation can not complain of his obligor when such title has failed on account of his primary breach of the contract.   Sponable v. Owens, 92 Mo. App. 174; Clendennin v. Paulsel, 3 Mo. 230; Marshall v. Craig, 4 Am. Dec. 647; note to Burdis v. Burdis, 70 Am. St. 830.  (4) It is impossible to apply satisfactorily any rule regarding the dependence or independence of covenants to every case, and this case is no exception.   The Missouri Supreme Court, recognizing this has said:   ''The only principle to be extracted from the authorities' numerous cases in relation to the dependence or independence of covenants is, that they are to be construed according to the intention and meaning of the parties and the good sense of the case.''   Freeland v. Mitchell, 8 Mo. 488; Turner v. Mellier, 59 Mo. 526; Stavers v. Curling, 3 Bing. (N. C.) 368.   (5) If the continuation of the issue of the paper was not embraced in the agreement to fill out  the subscriptions then defendant Hughes had the right to prove and show that such was the promise on the part of Neville as an additional consideration.  Aull Sav. Bk. v. Aull's Admr., 80 Mo. 199; Holt v. Holt, 57 Mo. App. 272; Harrington v. Railroad, 60 Mo. App. 223.

*W. D. Tatlow* and *J. T. White* for respondent.

(1)   Notice or knowledge of a defect in the title of property purchased by the convenantee can not be set up as a defense by the covenantor in an action on the covenant.   In this case evidence that the plaintiff had notice of the contract, which gave Harrington a conditional right to the property was properly excluded.   Kellog v. Malin,

50 Mo. 503; Whiteside v. Magruder, 50 Mo. App. 371; Clore v. Graham, 64 Mo. 249; Williamson v. Hall, 62 Mo. 405; Rawle on Covenants, secs. 125-133. (2) The stipulation in the bill of sale whereby the plaintiff agreed, "to fill out all unexpired subscriptions to the Mail without expense to the said H. H. Hughes," is an independent covenant. It was not necessary to plead or prove the performance of it in order to recover. Springfield Seed Company v. Walt, 94 Mo. App. 76; Turner v. Millier, 59 Mo. 526; Sawyer v. Christian, 40 Mo. App. 295; Burris v. Shewsbury, etc., 55 Mo. App. 381, l. c. 389; St. Louis Steam Heating & Ventilating Co. v. Bissell et al., 41 Mo. App. 426; Pfeninghausen v. Shearer, 65 Mo. App. 348; O'Neill v. Webb, 78 Mo. App. 1; Kauffman v. Raeder, 54 L. R. A. 247, 108 Fed. Rep. 171. (3) It is true that the consideration of a contract may be shown to be more or less than, or different from the one recited, but where the statement of the consideration ceases to be merely a recital and becomes contractual in its character, parol evidence is not admissible to add to or alter it. Jackson v. The Chicago, etc., 54 Mo. App. 644; Davis v. Gann, 63 Mo. App. 429; Halferty v. Searce, 135 Mo. 433.

STATEMENT.

For cause of action plaintiff, Neville, averred a purchase, December 29, 1898, from defendant of the Springfield Weekly Mail and printing plant for five hundred dollars; that by the contract of sale, a copy of which was exhibited, defendant Hughes, by his covenant therein guaranteed the conveyance of a clear title to said property to plaintiff; that defendant did not have a clear title thereto but it was conditional and qualified in this, that one Harrington had an interest in such property, valid and subsisting at time of the purchase. That on the ninth of January, 1900, Harrington commenced an action in replevin against plaintiff and de-

fendant in the circuit court of Greene county to recover the above property, and plaintiff appeared therein, and filed a separate answer admitting, that at time of filing the complaint he was in possession of the property, and denying the other allegations, and affirming that he was then, and at time of service of the writ, owner of the property, entitled to its possession and demanded its return; that he further notified Hughes to defend the action, and the latter filed a disclaimer, denying that he was in possession and asking to be discharged; that upon trial in the circuit court of Wright county, by change of venue, it was adjudged, that Hughes did not have a clear title to the property, but that Harrington was its lawful owner, and the judgment rendered by such circuit court establishing such fact, was affirmed by the St. Louis Court of Appeals, thereby finally determining that on the twenty-ninth day of December, 1898, defendant did not have a clear title to the property, but that it was subject to the condtions and agreements contained in the contract between Hughes and Harrington, and by reason of such contract Hughes' title to such property was conditional and qualified, and the title of plaintiff therein failed, to plaintiff's damage as detailed, for which judgment was asked.

In defense the defendant answered, that on the date named he sold plaintiff the newspaper and plant, including subscription list, good will, etc., for the sum specified, and then and prior he was the owner of the property sold; that on the sixteenth day of August, 1898, he and Harrington being each owners of one-half interest in such property, he then bought Harrington's interest under a contract, by which he was to publish the paper for one year thereafter as a Democratic paper, and to advocate the doctrines of the Chicago platform, and in event he, defendant, failed to so publish such paper, all such property was to revert to and become the property of Harrington, including both his original interest as well as the interest of Harrington thus pur-

chased. That at time of and long prior to the sale to plaintiff by defendant, plaintiff had full knowledge of the agreement between defendant and Harrington; that the subscription to such paper at time of its original publication had been largely procured through the influence and personal solicitation of defendant and Harrington, and upon the expressed intention and promise of making it a permanent publication, and as a failure to continue such publication would affect the good name and standing in the community of Harrington and defendant, the agreement to continue its publication until August 16, 1899, was so made, and on the twenty-ninth day of December, 1898, it had a bona fide circulation of about six hundred subscribers, many of whose terms of subscription did not expire until August 16, 1899, all of which was well known to plaintiff at time he bought, and this agreement on part of defendant to so publish such paper rendered his title conditional and qualified, as stated in plaintiff's petition; that at and prior to time he sold to plaintiff, plaintiff represented to and agreed with defendant, as part and one of the considerations and a condition of sale, that he would place the paper, and continue its publication, upon a more permanent basis, and likewise agreed that he would fill out all unexpired subscriptions without expense to defendant; and at the time, plaintiff was insolvent and made such promises and representations fraudulently for the purpose of obtaining possession of the property and with no intention of complying therewith. That soon after purchasing such paper, January 5, 1899, plaintiff suspended publication, failed and refused to fill out unexpired subscriptions, and failed and refused to keep his contract to continue its publication to August 16, 1899, and in consequence the title thereto reverted to Harrington. That plaintiff's failure of title to such property was the result of his own voluntary act and he was not entitled to recover, and the answer concluded with a general denial of all other averments of the petition.

The contract between the parties evidencing the purchase and sale, for the price already stated, of the newspaper with its subscription list and good will, job printing plant and fixtures complete, continued thus: "The said H. H. Hughes guarantees the conveyance of a clear title to said property. The said H. Clay Neville agrees to fill out all unexpired subscriptions to the Mail without expense to the said H. H. Hughes. The said H. Clay. Neville is not obligated by this contract to pay any debts which may have been incurred by those who have operated the Mail heretofore."

The evidence introduced for plaintiff consisted of copy of judgment in action by Harrington, being judgment in replevin against plaintiff for property embraced in bill of sale, one cent damages and costs (83 Mo. App. 589), and testimony of plaintiff, who deposed that he was a newspaper man, connected with the Leader-Democrat at Springfield, and conducted the Mail, after he acquired it, for about two weeks when it was seized in replevin as above narrated; that he had discussed with defendant the contingency of suspending, and had transferred the subscription to the Leader-Democrat, and sent the latter paper to all subscribers of the Mail for the term of their unexpired subscription, which was entirely satisfactory to and approved by defendant, who stated it would be better for the subscribers, that the Leader-Democrat was the better paper. That witness had called on Sunday upon defendant, after the replevin suit was brought, and the latter stated he knew the action was to be begun and in reply to plaintiff's statement that he expected defendant to make defense of title, defendant had replied he certainly would do so, and expressed perfect willingness to defend the suit, adding, to make out delivery bond, and he would file it and would refund plaintiff his money without controversy. Upon cross-examination, plaintiff denied that defendant had told him the paper would revert to Har-

rington in event of suspension, but he acknowledged he knew of the contract with Harrington.

In defense Hughes testified, in form of a deposition, that the agreement of sale to plaintiff was only partially reduced to writing, and he had explained several times to him the nature of the agreement with Harrington regarding the publication and fulfilling the subscription list, and plaintiff knew, what the agreement was respecting these features, that defendant could convey no title unless he continued the publication to August 16, 1899, and fulfilled all the subscriptions, and that a failure would forfeit defendant's rights and the property revert to Harrington, and he denied the conversation mentioned in plaintiff's testimony after the replevin suit was begun; and defendant then offered the contract between Harrington and Hughes.

Testimony was further introduced, to the effect that in December, 1899, the Mail had about five or six hundred subscriptions of its total of fifteen hundred, extending to August, 1899; also the evidence of plaintiff in the replevin action was offered, to the effect that the value of the property was then about eight hundred dollars. The deposition of Harrington was also offered, tending to show that on August 16, 1898, he informed plaintiff of the agreement contemplated between the deponent and Hughes, and after the latter and himself had entered into the contract, he submitted it to plaintiff who read it, and at the time, witness remarked that a failure to publish the paper according to the terms would forfeit it. In rebuttal, plaintiff, being recalled, stated that with defendant he had estimated after suspension, that the amount all the subscribers might demand was about fifty dollars; that before signing the agreement Hughes wanted it more explicit, but plaintiff declined further conditions and informed defendant he would give subscribers some other paper, that he would transfer the list to the Leader-Democrat, and the defendant replied that this would be all right, the subscribers would be

benefited as the Leader was a better paper.  The testimony of plaintiff, respecting the filling out of unexpired subscriptions by sending another paper and the satisfaction of defendant therewith, was admitted over the objection of defendant; the contract between Hughes and Harrington was excluded at objection of plaintiff; those parts of the deposition of Harrington, concerning the knowledge and reading by plaintiff of the contract between Hughes and Harrington, were excluded at objection of plaintiff; and the rebuttal testimony by plaintiff of estimates of amounts payable to subscribers upon suspension was admitted over defendant's objections, and exceptions to such rulings duly saved by defendant.

The court, at close of the testimony, gave an imperative instruction in favor of plaintiff, rejecting the instructions presented by defendant.

REYBURN, J. (after stating the facts as above.) — 1.   The question, conspicuous at the outset of this case, is the relation borne toward each other by the reciprocal obligations assumed by the contracting parties in the contract of purchase, and in particular whether the covenant made by plaintiff for the continued publication of the newspaper was a contract so far dependent on the promises of the vendor, as to render the issuance of the paper for the lifetime of those oustanding subscriptions, which might be confined to the sixteenth day of August, 1899, a condition precedent, and its performance essential to recovery for breach by covenantor of covenant of unencumbered title to the property purchased.   As in construing and effectuating all contracts, the object and intention of the contracting parties is to be looked for and discovered, if practicable from a survey of the whole instrument, and due effect to their intent be accorded.   Among the features also to be regarded in determining whether covenants are dependent, are the times of their performance and whether the covenant considered goes to part or all of the consideration.

Turner v. Mellier, 59 Mo. 526; St. L., etc. Co. v. Bissell, 41 Mo. App. 426; Sawyer v. Christian, 40 Mo. App. 295. The latter element was formulated into a rule of construction thus expressed by Lord Ellenborough in an ancient case, which has been invoked by this court as well as by the federal tribunal of this jurisdiction: "Where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other, but where they only go to a part, where a breach may be paid for in damages, there the defendant has a remedy on his covenant and shall not plead it as a condition precedent." Ritchie v. Atkinson, 10 East 295; Kauffman v. Reader, 108 Fed. Rep. 171; s. c., 54 L. R. A. 247; Springfield, etc., Co. v. Walt, 94 Mo. App. 76. This principle was further clearly elaborated in the last case thus: "The mutuality of covenants turns on the intimacy of their connection, considered in the light of the entire agreement, whether one was so bound up with the other that the failure of one party to perform a stipulation hindered performance by the other party, or left him without an adequate consideration for performance." In analysis of the expression adopted by the respective parties of the agreement between them, guided by these well-established doctrines, little room for hesitancy or question can exist, that the covenant on the one part to fill out the unexpired contracts for the paper by its continued issuance, and the obligation of warranty of title by defendant, agreements to be performed at varying periods, one operative at time of transfer and the other to be completed in the future, were not mutually dependent but were designed by the parties to be distinct and separate obligations apart and disconnected.

2. Nor could defendant avail himself of the knowledge of the provisions of the contract with Harrington by plaintiff as a defense to his covenant, the basis of this action. The knowledge of both vendor and vendee, that the title to the property in defendant was qualified by

his agrements with Harrington did not discharge the covenant made with plaintiff. The vendor may warrant his title as clear and perfect to personalty sold, when the vendee as well as he, himself, possesses notice of an outstanding claim; if the vendee usually exacts of the vendor· an express covenant against incumbrances as a safeguard against possible but unknown claims, the expediency and prudence of requiring such protection against a menace known to exist and threatening the validity of the title under certain recognized contingencies are the more obvious and reasonable. The evidence of such knowledge by or notice to plaintiff was immaterial and irrelevant and its exclusion proper and appropriate. Whiteside v. Magruder, 75 Mo. App. 364; Kellogg v. Malin, 50 Mo. 496; Williamson v. Hall, 62 Mo. 405; Clove v. Graham, 64 Mo. 249.

3.   The defendant, by the language of his defense as well as by the testimony sought to be introduced in its support, under the mask of establishing an additional consideration to the purchase money, endeavored to enlarge and depart from the terms of the contract as executed by proof of the contract between Hughes and Harrington, and by the deposition of the latter. The contract between the parties hereto was complete in itself, and that oral testimony in such event is inadmissible is beyond controversy, and would doubtless be conceded by appellant. As felicitously expressed by the Supreme Court in a recent decision, "The reason underlying the rule is to give stability to written agreements, and to remove the temptation and possibility of perjury, which would be afforded if parol evidence was admissible." Crim v. Crim, 162 Mo. 544.

The appellant, however, with considerable ingenuity, argues that when respondent agreed to fill out the unexpired subscriptions he agreed in effect to publish the Mail till the date in August, already mentioned, being the contract between Hughes and Harrington, and a default in this provision under the contract between

Neville v. Hughes.

the latter incurred a forfeiture, and thus the agreement between the parties hereto became in truth and substantially a conditional sale; it may be remarked that if such had been the understanding of the parties, the contract would have been so worded. Further such testimony would be an unwarranted infraction of the fundamental rule above invoked; after much wavering and legal debate, it is now established as a legal principle, quite general in its recognition, that the consideration of a contract at present may be the subject of explanation, in so far as it may be shown to exceed or fall short of the amount recited in the instrument, but where the evidence offered contradicts the recital of the consideration acknowledged, or where the consideration is made part of the contract itself, such parol evidence is inadmissible to modify it. Halferty v. Scearse, 135 Mo. 428; Jackson v. Railroad, 54 Mo. App. 636; Davis v. Gann, 63 Mo. App. 425.

The testimony proffered on behalf of defendant constituted no defense to plaintiff's claim, the instruction directing the jury to find a verdict for the latter was justified under the conditions attending this case, the judgment is for the right party and is affirmed. *Bland, P. J.,* concurs. *Goode, J.,* not sitting, having been of counsel.