## FOLK, Respondent, v. WIND, Appellant.

### St. Louis Court of Appeals, April 30, 1907.

1. **TRUSTS: Termination of Trust.** Where a client put property in the hands of her attorney to invest and manage for her, there being no written agreement as to the terms and conditions upon which he managed it, it was a trust terminable at the will of the *cestui que trust,* and it was the trustee's duty to render her an accounting and relinquish her property in a reasonable time after demand.

2. **———: Compensation to Trustee: Forfeiting Right to Compensation.** Where the trustee in such case failed to keep a proper account, failed to account to his *cestui que trust* or turn the property to her after repeated demands and finally put the *cestui que trust* to the trouble and expense of employing counsel and bringing suit to secure a settlement, the court was justified in disallowing compensation for his service as trustee, although he made no profit out of the funds and there was no evidence of intent to defraud and no loss of the trust property through his management.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

MODIFIED AND AFFIRMED.

*F. A.* and *L. A. Wind* for appellant.

*Carter, Collins & Jones* for respondent.

GOODE, J.—This is an action for an accounting and the recovery of assets held in trust by defendant for plaintiff as *cestui que trust.* Defendant is an attorney at law practicing in the city of St. Louis. He had represented professionally the plaintiff and her sister and mother in several transactions and lawsuits, and enjoyed their confidence. Plaintiff is the daughter of Philip E. Green, deceased. She has been married twice, her first husband being William E. Butze, deceased, and her present husband, H. P. Folk. Butze died March 9, 1901,

124 App.—37

leaving a will which made plaintiff his sole legatee and she administered the estate. Her father, Philip E. Green, died testate February 16, 1893, leaving a widow and four children. His will left his estate to his brother Robert W. Green in trust for the widow and children. The trustee on March 17, 1905, made a distribution among the *cestuis que trustent* of the assets which had come into his hands, the portion turned over to plaintiff being $8,659.02 in cash and securities; besides which she inherited an individual interest in some parcels. of realty. She entrusted her interest to defendant to invest and manage for her. The Butze estate was settled finally October 19, 1903, plaintiff receiving $16,415.29 in cash and securities as her deceased husband's legatee; and this property she likewise entrusted to defendant. Early in the spring of 1904 plaintiff asked defendant to render an account of the assets in his hands, which he failed to do. Repeated requests for an accounting followed, accompanied, in July, 1904, with a demand that defendant deliver to plaintiff all money, securities, deeds, documents and effects held by him for her. Her demands remaining uncomplied with until September, 1904, she then employed an attorney to act for her in getting a statement from defendant and a relinquishment of her assets. The attorney's efforts to induce plaintiff to account and settle without litigation having failed, this suit was instituted November 3, 1904. The petition states an account of many items against defendant; the account having been made up as accurately as possible, from the records and papers of the probate court relating to the Green and Butze estates. There is a second count in the petition asking damages both compensatory and punitive for defendant's failure to account and turn over plaintiff's property. The answer was a general denial.

Shortly after the suit was filed defendant delivered to plaintiff's attorney assets of hers amounting to $21,-

787.50, but furnished no account of his receipts or disbursements, as trustee. By agreement of parties the case was referred to F. J. McMaster to try all the issues. The referee having heard the evidence of both parties, reported, denying any damages under the second count of the petition and stating an account of defendant's receipts and disbursements, which showed a balance in his hands belonging to plaintiff of $884.40, for which the referee recommended that judgment be entered. Exceptions to the report were filed by defendant, but overruled, and judgment entered in accordance with the referee's recommendation. Defendant appealed.

The report of the referee is too long to be inserted in this opinion; besides, most of it relates to items concerning which the parties agreed after the evidence had been introduced. The differences between them regarding several items originally in dispute, arose because defendant failed to furnish a statement and plaintiff being left to the probate records for information, got mistaken impressions from those records. The items which remained in controversy after the evidence was in, were of a minor character, not involving large amounts and most of them were resolved by the referee in favor of the defendant, but two or three were decided against him. We are asked to review but two of these adverse rulings, one disallowing defendant any compensation for his services as trustee and the other charging him with certain interest notes amounting to $412.80, which he says were paid, by plaintiff's order, to her mother. The evidence regarding who received the payment of the notes is obscure and somewhat conflicting. After an attentive study of it by all the members of the court, they agree in the belief that the probability is that two of the notes, amounting to $325 were never paid to defendant; but were taken up partly in settlement of a debt owed by plaintiff to the maker (plaintiff's mother) for board and partly by the check of the maker to plaintiff in person.

This is a question of fact and we cannot recite the evidence bearing on it. The matter is left in doubt, but the weight of the evidence is in defendant's favor and we will allow him credit for the amount of the two notes.

Compensation was denied defendant because he had broken the trust in failing to account to plaintiff for his handling of her assets and turn them over on demand. The findings of fact by the referee on this point will be adopted as true, for the evidence supports them. They are as follows:

"In order to reach what the referee considers a proper conclusion in relation to allowing defendant compensation for his services rendered plaintiff, it will be necessary to review more fully the facts bearing on the question.

"At the time plaintiff permitted defendant to take the possession, control and management of her property, securities, moneys and effects, there was no written agreement as to the terms and conditions upon which he took same and was to act for plaintiff. Plaintiff appears to have had confidence in defendant and allowed her property to remain in his hands and the trust relation of attorney and client seems to have been created. Defendant had advised plaintiff that by allowing him to handle it in this manner, the income could could be made such that she could receive seventy-five dollars per month and the principal be kept intact.

"During the administration of the Butze estate, while all checks were signed by plaintiff, yet they were signed under defendant's instructions and advice, and he kept the check book and stubs and as far as plaintiff knew, has them still.

"Matters seem to have gone along satisfactorily until September, 1903, when plaintiff asked for a statement and one was sent her which she did not fully understand. In December, 1903, she again requested a statement and was promised one in a short while, but defendant was

too busy at that time to prepare one. For the next four or five months plaintiff frequently requested a statement but was put off with the reply that defendant was either too busy, or as soon as he could sell and dispose of a piece of real estate belonging to plaintiff and others he would be able to have the account in a satisfactory condition, showing that her income would be at least seventy-five dollars per month, and after that would make her quarterly statements. This property was never sold and no statement rendered.

"On or about May 21, 1904, plaintiff wrote defendant requesting a statement of her account, but was answered by defendant that he had expected to have it April 1, previous, and every week thereafter; that he was very busy but would have a statement for her by June 10, 1904. On June 10 the defendant again wrote plaintiff whether in reply to a request or not is not shown, regretting that he was unable to send statement; that he was busy, but would have it ready in a few days. Sometime about June 25, 1904, plaintiff seems to have made another request, and on that date defendant wrote plaintiff that he would probably be able to render statement of the account down to January 1, 1904, by July 1, and continue it on down to a final settlement on July 15.

"On July 5, 1904, plaintiff wrote defendant requesting that the statement of her affairs should be in her hands by July 16 and notifying defendant that Mr. Tyler and Mr. Folk would call on him about that date and requesting that he give them the statement.

"About that date Mr. Tyler and Mr. Folk did call on defendant and demanded of him that he render a statement of plaintiff's account and turn over her securities and other property in his hands. They had written authority from plaintiff which they turned over to defendant.

"About this time, or subsequent thereto, plaintiff employed Mr. C. C. Collins as her attorney to secure

from defendant a statement of the account existing between them, and also to secure the return of all properties and effects in his hands belonging to plaintiff.

"In September, 1904, Mr. Collins called on defendant and demanded an accounting and a return of the property. Defendant declined to return the property until he had made up a statement or account, as he needed the securities in order to make up the account. He promised to have the account ready in a few days, which he failed to do, and afterwards made appointments with Collins at least four times, at which times he would have the account ready. On all of these occasions, defendant failed to produce an account, and gave an excuse that he was too busy, and on two occasions complained of being ill. ·

"After suit was commenced and while the court was considering the question of appointing a receiver, defendant did turn over to Mr. Collins, as attorney for plaintiff, the securities and papers that were in his hands.

"On October 3, 1904, Collins wrote defendant in behalf of plaintiff, calling his attention to an appointment made with Mr. Tyler by defendant for October 1, 1904, at three p. m., which was not kept by defendant and requested that he have a statement ready by October 5, at three p. m. This seems not to have been complied with by defendant and Collins wrote defendant again on October 6, requesting an appointment for October 8, at three p. m. as that was the time designated by defendant in his note to Mr. Tyler. In this same letter he notified defendant that the delay was a great inconvenience to his clients, and any further delay in making the statement and withholding the securities would be considered willful on the part of defendant. ·

"On October 8, 1904, defendant wrote Collins telling him he would be unable to meet him that day because he was unable to devote the necessary time in making the

statement and that it would take a full day's uninter-. rupted application to make up the necessary statement.

"On October 9 Collins and Tyler had an interview with defendant at which time defendant refused to render a statement and deliver property earlier than October 15, 1904.

"On October 10 he again wrote defendant concerning this delay and protesting against it and notified defendant that he was instructed to take legal steps to protect plaintiff's rights, in the event all papers and securities were not delivered on or before October 15, at three p. m.

"No statement was rendered and the papers and securities were not delivered on October 15. Nothing was done by defendant to furnish the statement and deliver the securities and papers between this time and the institution of this suit."

The learned referee concluded, and we agree with him, that the trust was terminable at plaintiff's pleasure and that it became defendant's duty to render her an accounting and relinquish her property in a reasonable time after demand. It was further found that defendant had failed to keep a proper account, had failed to file an account after he was ordered to do so by the referee, had failed and refused to account and turn over plaintiff's property in a reasonable time after demand, and had put plaintiff to the expense of employing counsel and the trouble of going to law to enforce her rights. On those grounds the referee deemed it just to disallow defendant's claim for compensation for his services as trustee. In justice to defendant it should be added that the referee expressly found there was no proof that defendant had made any profit out of the funds and securities in his hands. Defendant was so remiss about complying with plaintiff's oft-repeated demands for an accounting and the turning over of her property, that he

must be regarded as having failed, in those respects, of fidelity to the trust reposed in him, though it does not appear that his failure either was intended to defraud the plaintiff or resulted in any loss to her further than putting her to the unnecessary expense of employing counsel and seeking relief in court. The general rule in this country is that trustees shall receive a reasonable reward for their time, labor and responsibility in connection with the management of the trust estate. But compensation is allowed for faithful performance of their duties to the extent of reimbursing the *cestui* for the loss caused by the breach. [Judge of Probate v. Jackson, 58 N. H. 458; Lehnear v. Rothbart,159 Ill. 270; Carner's Appeal, 79 Pa. St. 230; Elmer v. Lopez, 25 N. J. Eq. 475; Blannett v. Acherman, 23 N. J. Eq. 424.] Courts of chancery in the exercise of a judicial discretion may withhold compensation from a trustee for misconduct resulting in loss to the *cestui*. There is no such disproportion between the compensation defendant would have been entitled to had he accounted and settled with plaintiff on her demand and the loss entailed on her by his breaches, as to justify us in saying the court below and the referee abused their judicial discretion in rejecting defendant's claim for fees.

Points made by defendant against the jurisdiction of the circuit court and rulings on evidence have been examined and found to be without merit.

It is considered, ordered and adjudged that the judgment of the circuit court be modified by deducting therefrom the sum of $325, the amount of the two notes aforesaid, and be otherwise affirmed—the balance of said judgment, to-wit, $559.40, to bear interest at six per cent per annum from November 4, 1904. All concur.