JAMES T. MONTGOMERY, Respondent, v. LEON K. SCHWALD and M. D. MOORE, Appellants.

Kansas City Court of Appeals, January 19, 1914.

1. **BILLS AND NOTES: Consideration.** Plaintiff held a judgment against a corporation which owed many other debts for which defendants were security. One of the defendants also owed plaintiff a note for one-half the sum advanced by plaintiff for the corporation and for which his judgment had been rendered. The corporation desired to sell some of its land in order to pay its debts. It could not do so unless plaintiff as holder of the judgment consented. Defendants were anxious that the sale of the land be made in order that the debts they were surety for could be paid. They agreed to give plaintiff the two notes sued on if he would allow the money derived from the sale to be used in paying the other debts. Plaintiff consented and took the two notes, the other debt of the corporation was paid and defendants were discharged from liability thereon. Plaintiff also delivered to one of the defendants the note he held against him and the collateral security therefor. *Held,* there was a consideration for the notes in suit independent of the fact that plaintiff agreed to take a deed to the land sold and to hold it as trustee to secure defendants and other creditors and sureties of the corporation.

2. ———: **Discharge.** Under Sec. 10089 of the Negotiable Instrument Act, R. S. Mo. 1909, when the payee of a note tears it up, with the intention of destroying and cancelling it, this is a discharge of the note.

3. **TRIAL PRACTICE: Finding of Fact by Trial Court, in Law Case, Conclusive.** If such agreement to take and hold the land

Montgomery v. Schwald.

as trustee was a part of the consideration, then it has not been shown that plaintiff violated that agreement since the trial court, sitting as a jury, found that he had not, and such finding must be accepted as conclusive where there is any substantial evidence to support it.

Appeal from Cooper Circuit Court.—*Hon. J. G. Slate*, Judge.

AFFIRMED.

*George F. Longan* for appellants.

*James T. Montgomery, pro se* and *Chas. E. Yeater* for respondent.

TRIMBLE, J.—In this case suit is brought on two promissory notes admitted to have been executed by the defendants. Their defense is failure of consideration. A jury was waived and the cause tried before the court. Judgment was rendered for plaintiff on both counts. Defendants appealed.

Some time in 1908 all the parties to this suit were interested in a corporation called the "Mexican Gulf Land & Development Company Limited" which was organized to buy 75,000 acres of land in the Republic of Mexico, and which bought said land largely on credit. The company sold treasury stock as far it could and used the money to make payments on the land. Needing more money for this purpose, and not being able to raise it otherwise, the remaining amount necessary to be raised was divided into various sums, and different groups of men in the corporation gave their notes and raised the respective amounts agreed to be raised by each group. The defendant, Schwald, obtained four notes of $1440 each, payable to the company and endorsed in blank by it, and endeavored to sell them in order to put the money into the company's coffers. Failing in this, he and plaintiff exe-

cuted a note to a Sedalia bank for $5760 and put up the four notes as collateral, and the money was used by the company. This was in August, 1908. The following February plaintiff severed his connection with the company.

The note to the Sedalia bank was renewed from time to time, and at one of these renewals it was signed by plaintiff and both defendants. At last the bank demanded its money, and as plaintiff was the only one on the note who could pay at that time, he raised the money and paid it off, taking into his possession the four collateral notes.

The defendant Schwald paid plaintiff some of the interest, and then Schwald, who was plaintiff's only coprincipal on the note to the Sedalia bank (Moore having signed as security for both), gave plaintiff his note for $2847, being one-half of the amount he had paid the Sedalia bank, and put up with plaintiff, as collateral security, $9400 of notes secured on land in Ripley county, Missouri.

Plaintiff then brought suit against the Mexican Land Company, herein above mentioned, on the four collateral notes he had obtained when he paid the Sedalia bank, and in this suit plaintiff recovered judgment against said Mexican Land Company in the sum of $6415.40, March 20, 1911.

Plaintiff endeavored to obtain payment of this judgment but could not do so. On October 18, 1911, the defendant Schwald wrote plaintiff sending him $47.50 interest on his $2847 note and telling him to be in Kansas City on a certain date as the representatives of a new Mexico company, the Soto La Marina Land and Water Company, would be there with money to pay for $14,000 acres of land it was going to buy of the Mexican Land Company, and plaintiff could then get all or at least part of his money. The price agreed upon between the two companies for this land was $31,000. But, when plaintiff met the buying com-

pany's representatives at their conference with the
selling company, the former could pay only $18,600
down, leaving $12,400 yet due. The selling company
needed the entire $31,000 to pay off its debts, among
which was plaintiff's judgment. As there was only
$18,600 cash in sight the men interested in the sell-
ing company (the Mexican Gulf Land & Development
Company), wanted it used to pay such of its debts as
they were security for, and plaintiff also wanted his
judgment paid.

The two defendants in this case were sureties on
a note of the selling company to a trust company in
Kansas City for about $12,000 counting interest due.
Suit had been commenced on this note, and they pro-
posed to plaintiff that he allow this $12,000 indebted-
ness to be paid out of the $18,600 cash fund and let
them give their notes to him (plaintiff), with a year's
time, in payment of the Mexican Land Company's debt
or judgment to him.

Plaintiff finally agreed that if they would pay him
$1000 out of the cash to be received from the buying
company, and give him their notes for the balance
due him, to-wit, $6029, he would allow this to be done.
(As he had a judgment against the selling company
it could not convey the 14,000 acres to the buying com-
pany so as to obtain the $18,600 to pay its other debts,
unless he consented thereto.) This was agreed to, and
thereupon the defendants in this suit executed to plain-
tiff the two notes sued on herein. The $12,000 note,
on which suit was then pending against defendants
herein as sureties, was then taken up with the money
received from the buying company, and defendants
herein were released therefrom.

During the negotiations a question arose about
how defendants, and others who were taking up other
indebtedness of the company, could be secured; and
both the selling and buying company agreed that the
14,000 acres bought by the latter should be deeded to

a trustee to hold for the benefit of such parties, and, as the buying company made payments on the balance due from it, the trustee would apply it on the debts of the selling company and thus those who were its sureties would be protected. Plaintiff was asked to become such trustee and he finally consented and drew up the trust deed. This was never executed as will be set forth later.

When defendants herein executed and delivered to plaintiff the notes sued on, the latter offered to return to Schwald his $2847 note given for half the original indebtedness (which plaintiff had paid to the Sedalia bank) and also the collateral $9400 Ripley county land notes and the four collateral notes for $1440, on which he had recovered judgment against the Mexican Gulf Land and Development Company. They were not turned over at that time, however, but by agreement were left with plaintiff until later when he did, on February 17, 1912, turn over the $9400 of Ripley county notes and the four $1440 collateral notes as shown by receipts signed by both defendants. Plaintiff also at this time, and in the presence of all, cancelled Schwald's $2847 note by tearing it up and throwing it in the waste basket. The two notes sued on were executed November 9, 1911.

There is not a great deal of conflict in the testimony except as to plaintiff's presence and participation in a meeting of July 25, 1912, at which it was agreed that the selling company should convey the 14,000 acres direct to the buying company instead of to the trustee. This deed to the trustee, as hereinbefore stated was never executed, but the land was conveyed direct to the buying company, the Soto La Marina Land and Water Company. It is defendants' contention that the debt represented by the two notes sued on was a debt of the Mexican Gulf Land and Development Company, as plaintiff knew, and that they (the defendants) signed the notes sued on here-

in upon an understanding with plaintiff that he would take, as trustee, the deed to the 14,000 acres and hold the same as security for these notes and all others. Their contention is further that plaintiff was present at the meeting held on July 25, 1912, and consented and urged that the 14,000 acre tract be conveyed direct to the buying company whereby that security was lost to them; that the agreement to execute the notes and the agreement to hold the land as trustee was all one transaction and plaintiff has no title to the notes, and they are not valid, unless all the elements and portions of the transaction have been completed; that as the agreement to take the land as trustee was not kept, the consideration for said notes has failed.

As to whether plaintiff consented to the elimination of the trust deed, there is, as stated, a sharp conflict in the evidence. Plaintiff says he was not at the meeting, and it is shown that when he discovered that the trust deed had not been made but the land had been conveyed to the new company direct, he demanded that they executed it to him but they did not do it. It was certainly to his interest to get it as it gave him additional security for his debt, and no plausible reason is given why he should voluntarily consent to give up that security. It is not necessary to analyze the testimony, however, since the court, sitting as a jury, found that plaintiff was not at the meeting and did not consent or urge that the trust deed to him be dispensed with.

The court found for plaintiff on both counts. If there was substantial evidence to support that finding, we are bound to accept it. [Bogarth v. Legion of Honor, 93 Mo. App. 564, l. c. 567, and cases cited.] The court gave for plaintiff the following declaration of law: "If the court shall believe from the evidence that the consideration of the notes sued on has not failed in whole or in part, then the finding and judgment shall be for the plaintiff." No declaration of law

was asked on the part of the defendants. Consequently, unless the evidence shows indisputably that the consideration for the notes has failed, that is, shows this as matter of law, the judgment must stand.

Plaintiff, by paying the Sedalia bank the amount of the note executed by him and defendant Schwald, with the defendant Moore as surety for the two, and receiving the four collateral notes payable to the Mexican company and having its endorsement, became a creditor of the land company. Schwald, to pay his one-half of the amount so paid by plaintiff to the Sedalia bank, gave plaintiff his note for $2847 and ten Ripley county land notes for $9400 as collateral. Suit was brought and judgment recovered against the Mexican company on its four notes. Both defendants herein were on another note amounting to $12,000 owed by the company and suit had been brought. The permission given by plaintiff to use the $18,600 cash coming from the Soto La Marina Land Company to pay this $12,000 indebtedness and thus relieve defendants of liability thereon, and the extension of another year's time, were good considerations for the execution of the two notes sued on herein. As to Schwald, there was a further consideration of the cancellation of his note of $2847 and the returning to him of the Ripley county notes. When the $2847 note was torn up by plaintiff it was discharged. [Sec. 10089, R. S. Mo. 1909.] And although he did not make a formal release or assignment of the judgment held by him on the Mexican Land Company, he did turn over to defendants the notes on which that judgment was based, and has made no attempt to claim said judgment as his. He was not asked to formally assign the judgment to them, and if turning over to them the notes on which it was based was not an equitable assignment of the judgment, certainly the allowance of the use of the funds in paying other debts was, to that extent

177 Mo. App. 6

·at least, a giving up of his rights under his judgment. In the absence of any attempt on his .part to claim ·said judgment as his, and in the further absence of any demand to release or assign said judgment, or expecta-tion that he would do so, it is not seen how the failure to formally release said judgment can operate to de-·stroy the consideration for the notes.

It is therefore apparent that there is substantial ·evidence showing a good consideration for the two notes sued on, independent of the question whether plaintiff consented to the elimination of the trust deed ·or not. Because defendants' release from liability on the $12,000 indebtedness was a benefit accruing to them without regard to the security afforded by the trust ·deed. But be this as it may, as there is substantial ·evidence of a good consideration and also evidence that the plaintiff did not agree to forego the trust deed, we ·cannot say, as matter of law, that there was no con-·sideration for the notes or that the same has failed.

It is suggested that the circumstances urged by ·defendants to show a failure of consideration create, ·to some extent at least, an equitable defense and there-fore we should treat the case as one in equity and re-view the entire evidence. While we do not agree with this suggestion, yet it may be said that, if this could be done, we are not so impressed with the facts or ·with the view that the equities are so much on defend-ants' side as to compel us to disagree with the con-·clusion reached by the learned trial judge. Defend-·ants claim, that they would not have executed the notes ·sued on had they known the deed of trust would not be ·given, does not carry a great deal of weight when we see that both defendants, by giving the notes, were ·getting rid of a $12,000 indebtedness for which they were liable and on which they were then being sued. In addition to this, Schwald was already liable to plaintiff on a $2847 note. The two notes they gave plaintiff were approximately only $3000 each. Were

we entitled to weigh the evidence we cannot say we would disagree with the trial judge, when all the circumstances are considered together with the interest the various parties had in doing what was done, the correspondence had, and the written receipts given in evidence.

As stated before there is not much dispute over any of the facts except as to the presence of plaintiff when it was decided to forego the trust deed. But in one view of the case, even if he were present and consented to this, this would not necessarily destroy the notes sued on. The notes were executed before this alleged consent or decision to forego the deed of trust was given. They were executed before the trust deed was to be executed. The condition that they were to be valid only upon the contingency that a deed of trust should be taken and held by the payee was not expressed in the note but, if made at all, was a mere oral condition to be performed after the execution of the notes, and that too by a party over whom the payee of the notes had no power or control.

The testimony offered to show this oral condition was objected to on the ground that it was an attempt to contradict or vary the terms of a written instrument by parol testimony. The written instruments promised absolutely and unconditionally to pay certain sums of money. The evidence showed a consideration for the giving thereof. The evidence offered by defendant would have had the effect of showing that the promise to pay was not unconditional but was conditioned upon the payee taking a trust deed to the $14,000 acre tract. This would contradict the unconditional terms of the notes, and where a consideration has been otherwise shown, this cannot be done under the guise of showing a failure of consideration. [Christian University v. Hoffman, 95 Mo. App. 488; Yarvey v. Marks, 134 Mo. 1, l. c. 7; Third Nat'l Bank v.

Reichert, 101 Mo. App. 242, 1. c. 253; Wislizemus v. O'Fallon, 91 Mo. 184; Hurt v. Ford, 142 Mo. 283.]

So that from whatever angle the case may be viewed, we think the judgment of the trial court was right and should be affirmed. It is so ordered. All concur.