SUPREME LODGE KNIGHTS OF PYTHIAS, Respondent, v. BEN W. DALZELL, Appellant.

St. Louis Court of Appeals. Opinion Filed June 25, 1920.

1. **EQUITY: Jurisdiction: Court of Equity Retains Acquired Jurisdiction.** Where a court of equity once acquires jurisdiction of a cause, it will retain it to do full and complete justice; and, where a suit as instituted was one of purely equitable cognizance, the court properly retained it as an equity case, although by stipulation the equitable questions in the case had been eliminated leaving the case simply an action by plaintiff for the recovery of money with a counterclaim interposed by defendant.

2. **CONTRACTS: Written Contracts: Evidence: Parol Evidence Inadmissible to Vary.** A party will not be permitted to say that he executed a written contract, but that it was a mere sham, not intended to express the real agreement between the parties, and that the real agreement was one contemporaneously or previously made by parol, inconsistent with the writing.

3. ———: **Insurance: Agent's Contract of Employment: Evidence: Insufficient to Show Subsequent Modification of Contract.** In an action by a fraternal order against a local section secretary involving premiums on insurance collected by him for the order, but claimed by such secretary under a contract of employment as compensation, evidence *held* not to show any subsequent modification of the written contract of employment that would entitle such secretary to the money retained, were that theory available to defendant.

4. ———: ———: ———: **Agent by Retaining Funds Lost Right to Commissions.** Under the provisions of a contract of employment between a fraternal order and a section secretary providing that compensation to be made to him for his services and to cover expenses in the transaction of the business of his office should be five per cent of the amount collected and remitted by him to the board, the secretary was not entitled to commissions on collections which he received but which he failed and refused to remit; and by withholding such funds and refusing to turn them over to plaintiff on demand, whereby plaintiff was compelled to sue in order to recover the same, defendant lost his right to receive commissions thereon.

Appeal from the Circuit Court of the City of St. Louis.—
Hon. *Rhodes E. Cave*, Judge.

AFFIRMED.

*S. C. Rogers* for appellant.

(1) The court erred in refusing appellant a jury
trial. The equitable questions in the case had been elim-
inated and there was no dispute as to the amount of
money collected because, forsooth, appellant's books
showed it. The only question was the right to off-set
this against the claim of appellant by virtue of his oral
contract so that appellant was entitled under the issues
to a trial by jury. Sec. 1967, R. S. 1909; Lee v. Conran,
213 Mo. 404; Thompson v. Stillwell, 253 Mo. 89; Kansas
City v. Smith, 238 Mo. 323; Taylor v. Brown, 92 Ohio
St. 287. (2) The court erred in refusing to permit ap-
pellant to introduce evidence showing that an oral con-
tract was entered into, the terms and conditions thereof;
that the alleged written contract, Plaintiff's Exhibit A,
was signed by him by request for the purpose only of
showing to other State agents; that it was not to be the
contract between the parties; was not to be a contract;
was not to be effective, binding or controlling upon either
party in any manner at any time; and that respondent
subsequently acted upon the terms and conditions in all
respects of the alleged oral contract. Because the rule
is that parol evidence is admissible to show that the in-
strument is altogether void; that it never had any legal
existence or binding force; that the minds of the parties
never met; that it was not intended as the contract; that
the real contract was an oral one and that the written in-
strument was executed for the purpose of showing to
other state superintendents. 1 Greenleaf on Evidence,
sec. 284; 2 Page on Contracts, sec. 349; Jones on Evi-
dence (2 Ed.), sec. 471; 17 Cyc. 642 and 694. Parol evi-
dence is admissible to show that a written instrument
was never to be performed but was a mere sham executed

for the purpose of influencing the conduct of a third person. Coffman v. Malone, 98 Neb. 819; So. St. Ry. Co. v. Met. Shoe Mfg. Co., 91 Md. 61; Col. Pk. Estates v. Massart, 112 Md. 648; Robinson v. Nessel, 86 Ill. App. 212; Waid v. Hobson, 17 Colo. App. 54; Natl. Bk. of Kennett Sq. v. Shaw, 218 Pa. 612; Birley & Sons v. Dodson, 107 Md. 229; Lepley v. Anderson, 142 Wis. 668. The evidence is admissible whether the proceeding be at law or in equity . Oak Ridge Co. v. Toole, 82 N. J. Eq. 451; O'Brien v. Paterson Brew. Co., 69 N. J. Eq. 117; Ward v. Union Trust Co. of N. Y., 152 N. Y. S 237; Burroughs Add. Mach. Co. v. Van Deusen, 138 N. Y. S. 839; Alexander v. Righter, 240 Pa. 22; Cobb v. O'Neal, 2 Sneed, 438; Preston v. Breedlove, 36 Tex. 96; Weaver v. Hotze, 27 Ark. 510; Duncan v. Sheehan, 13 Ky. 780. It is proper to show an original parol contract between the parties by which their contractual rights are to be detemined in spite of an alleged written contract. Trice v. Yoeman, 8 Kan. App. 537; Rittenhouse-Winterson Auto Co. v. Kissner, 129 Md. 102; Grierson v. Mason, 60 N. Y. 394; Col. Jewelry Co. v. Brown, 38 Okla. 44; 131 Pac. 1077; Bl. Globe & Lamp Co. v. Kern Incad. Light Co., 67 N. J. L. 279; Grebe v. Swords, 28 N. D. 330; Farrar v. Holt, 178 S. W. 618; Natl. Novelty Co. v. Duncan, 182 S. W. 888; Burke v. Dunlaney, 153 U. S. 228; Storey v. Storey, 214 Fed. 973; Davis v. Sterns et al., 85 Neb. 121; Corbin v. Sistrunk, 19 Ala. 203; Bowman v. Torr, 3 Iowa, 571; Furness-With Co. v. Fahey, 127 Md. 333; Earle v. Rice, 111 Mass. 17; Driscoll v. Colby, 145 N. Y. S. 681; Case Threshing Mach. Co. v. Barnes, 19 Am. & Eng. Ann. Cases, 246; 133 Ky. 321. Before the rule excluding parol testimony can be applied, it must first be determined a legal contract actually exists. Black v. W. St. L. & P. Ry. Co., 111 Ill. 351; Knight v. Walker Brick Co., 23 D. C. App. 519; Brewster v. Reel, 74 Iowa, 506; Humphrey v. Timken Carriage Co., et al., 12 Okla. 413; O'Leary v. McDonough, 23 N. Y. S. 665; Gregg v. Groesheck, 11 Utah, 310; Cameron v. Estabrooks, 73 Vt. 73; Webster v. Smith, 72 Vt. 12;

Atwood v. Gillett & Denoyers, 2 Doug. 206; Chic. Bldg. & Mfg. Co. v. Butler, 139 Ga. 816; Brennecke Bros. v. Heald, 107 Iowa, 376. The doctrine of the exception to the rule seems to prevail in Missouri to the effect that facts showing that a writing never acquired original vitality as a contract are admissible in evidence. Barrett v. Davis, 104 Mo. 549; Vardeman v. Bruns, 199 S. W. 710. Upon the same theory showing the purpose of delivering a deed is proper. Poplin v. Brown, 200 Mo. App. 255; Johnson v. W. O. W., 199 Mo. App. 98; Bobb v. Wolff, 148 Mo. 335; Brightwell v. McAfee, 249 Mo. 562; Burke v. Murphy, 275 Mo. 397; Huth v. Carondelet M. & D. D. Co., 56 Mo. 202; McKinney v. Hawkins, 215 S. W. 250; Denning Inv. Co. v. Echols, 183 S. W. 165; Bowers v. Bell, 193 Mo. App. 210. The same as to the delivery of bills and notes. Semms & Co. v. Barrett, 190 S. W. 394; Chapin v. Cherry, 243 Mo. 375. Parol evidence is admissible to show that consideration was other than contained in written instrument. Hockaday v. Warmack, 182 S. W. 263. Bare possession of document cannot be made a substitute for delivery. Huey v. Scott, 65 Mo. 689; Scott v. Scott, 95 Mo. 300. Courts will follow interpretation of contract placed thereon by parties. Coleman v. Ford Motor Co., 193 S. W. 866. Letters are admissible to show understanding of parties at time. Brightwell v. McAfee, 249 Mo. 562; Ireland v. Spickard, 95 Mo. Appp. 53. Missouri courts seem to follow the rule when the case is squarely before them for determination that parol evidence is admissible to avoid wrongful satisfaction of record. Joerdens v. Schrimpf, 77 Mo. 383. (3) The court refused to allow any damages because, as he stated, they were speculative and indefinite. This is no ground for a denial of same. Young v. Tilley, 190 S. W. 95. (4) The court refused to allow appellant five per cent commission on the amount collected amounting to about $165.68; also in failing to allow the six per cent discount allowed for advance judgments as provided in plaintiff's Exhibit "C." Section 491. This was error.

*Fordyce, Holliday & White* for respondent.

*S. H. Esarey* of counsel.

(1) Respondent was entitled to maintain this suit in equity for an accounting for, and preservation and recovery of the trust funds admittedly collected and wrongfully withheld by respondent's section secretary, Dalzell, and appellant was not entitled to a jury trial. (a) This is conceded by appellant, no point being made in his brief against the right of respondent in this regard. The law is well settled that an agent or trustee must account to his principal and *cestui que trust* for trust funds collected and withheld from the latter. Johnson v. Blell, 61 Mo. App. 37; Bobb v.Bobb, 89 Mo. 411, 1. c. 423.; Ely v. Coontz, 167 Mo. 371; Polk v. Wind, 124 Mo. App. 577. (b) "Where the aid of a court of equity has been properly invoked to obtain an injunction for the preservation of plaintiff's right, jurisdiction will be retained to completely enforce the right." 16 Cyc. 117; Davis v. Sullivan, 141 Mass. 76; Cocke v. Trotter, 10 Yerg. (Tenn.) 213; Leighton v. Young, 52 Fed. 439 (C. C. A.). (c) Jurisdiction in equity must be determined on the facts shown on face of the pleadings and jurisdiction cannot be defeated by subsequent events or proceedings in the case. Sprague v. Carroll, 188 S. W. 63; Johnson v. Blell, 61 Mo. App. 37; Martin v. Jamieson, 39 Ill. App. 248; Crawford v. Sommers, 3 J. J. Marsh (Ky.) 300; Case against Minot, 115 Mass. 577, 22 L. R. A. 536; Hawley v. Cramer, 4 Cow. (N. Y.) 717; King v. Baldwin, 17 Johns, (N.Y.) 384; Hamlin v. Hamlin, 56 N. C. 191; Masson's Appeal, 70 Pa. St. 26; Fraser v. McClenaghan, 2 Strobh. Eq. (S. C.) 227; Grubb v. Starkey, 98 Va. 831; Bush v. Jones, 184 U. S. 598, 46 L. Ed. 707; Kirk v. Du Bois, 28 Fed. 460; Hoborst v. Howard, 37 Fed. 97; 16 Cyc. 113. (d) When a court in equity has once acquired jurisdiction in a controversy, it will retain jurisdiction for all purposes and will administer complete relief. Quest v. Johnson, 58 Mo. App. 54; Pindy v. Gault,

19 Mo. App. 191, 202; Kemp v. Foster, 22 Mo. App. 643, l. c. 649; Johnson v. Blell, 61 Mo. App. 37. (e) The law is too well settled to need citation of authority that the defendanht is not entitled to a jury trial in a suit in equity. Sprague v. Carroll, 188 S. W. 63, l. c. 65; Johnson v. Blell, 61 Mo. App. 37; Ely v. Coontz, 167 Mo. 371. (f) The law is equally as well settled that the defendant cannot convert a suit in equity into a lawsuit by filing a counterclaim in the equity suit and that if he injects his counterclaim into the suit, he is not entitled to a jury trial. Sprague v. Carroll, 188 S. W. 63, l. c. 65; (g) The trial court rightfully held that there was no issue to submit to a jury, even if this had been a law case, because there was complete failure of proof by appellant of his alleged counterclaim; hence, there was nothing to go to a jury for it to pass upon. (2) Dalzell having failed to account and pay over to respondent the trust funds collected by him, as section secretary, is not entitled to any commissios. (a) Under supreme statute 450, no commission is due until the funds are actually remitted to the Board. Dalzell refused to remit and claimed the funds himself. (b) Under the law a trustee, who commits a breach of trust by withholding trust funds and compelling the beneficiary to sue to recover same, is not entitled to commissions. Polk v. Wind, 124 Mo. App. 577; Newton v. Rebenack, 90 Mo. App. 650, 676; Kemp v. Foster, 22 Mo. Mo. App. 643, l. c. 649; Harrison v. Craven, 188 Mo. 590, 610; Reilly v. Cullen, 101 Mo. App. 32, 39. (3) There was a total failure of proof by appellant of the alleged oral contract of January 27, 1916, which Dalzell claims was entered into between him and respondent, covering his employment as State Superintendent of respondent. (a) The proof showed, and it is conceded by Dalzell, that he signed the usual printed contract authorized by the Board of Control on January 28, 1916, the day after he claimed to have made the oral contract covering the identical subject matter. The printed contract provides that "The contract hereby expressed, when executed, shall supercede all other agreements and contracts here-

tofore made.'' Conversations and negotiations prior to the making of a written contract are merged into the writing and no such conversations and negotiations can be admitted to add to, vary or detract from the terms of such written contract. Minnesota Co. v. Grant, 81 Mo. App. 255; Norwich v. Buckhalter, 83 Mo. App. 504; Davis v. Scovern, 130 Mo. 303; Stringer v. Mfg. Co., 177 Mo. App. 234, 242. Dalzell is bound by his agreement which he signed and is conclusively presumed to have included the whole engagement and extent and manner of undertaking. Halferty v. Scearce, 135 Mo. 428, 433; Boggs v. Pac. Co., 171 Mo. 282; Standard Mfg. Co. v. Hudson, 113 Mo. App. 344, 349; Neville v. Hughes, 104 Mo. App. 455. (b) Dalzell and his counsel admitted that the alleged oral contract of January 27, 1916, was not made with the Board of Control, and did not receive the approval of the Board of Control. The alleged oral contract was claimed by Dalzell to have been made with certain individual members of the Board, or the Field Committee, none of whom had any authority to bind the Board of Control or the Insurance Department. (c). Even if the letters passing between Dalzell and the individual members of the Board of Control are admissible, these letters (which are relied on by Dalzell to prove the existence of the alleged oral contract of January 27, 1916) showed that no such oral contract was entered into. (d) Dalzell claimed he signed the written contract of January 28, 1916, to deceive the other superintendants and lead them to believe that the written contract was the real contract he entered into with the order, whereas he intended to insist that the real contract was an alleged oral one which he claimed he made with individual members of the Board. This is unconscionable conduct. He who comes into equity must come with clean hands. Equity will refuse to aid him in this attempted fraud on his fellow members and brothers of the order. ''Sham'' contracts are not approved by Missouri courts. 16 Cyc. 144, 145; Morrison v. Juden, 145 Mo. 282; Ward v. Hartley, 178 Mo. 135; Feld v.

Roanoke Inv. Co., 123 Mo. 603; Ryan v. Miller, 236 Mo. 496; Stillwell v. Bell, 248 Mo. 61; Prim v. White, 162 Mo. App. 594; Modern Club v. Stewart, 242 Mo. 421; Gilmore v. Thomas, 252 Mo. 147; Derry v. Fielder, 216 Mo. 176. Dalzell cannot ask that the contract of January 28th be set aside, because he is not entitled to the assistance of a court of equity, as he admits that he is a party to the alleged sham and nefarious contract from which he desires to be relieved. Feld v. Roanoke Inv. Co., 123 Mo. 603; Creamer v. Bivert, 214 Mo. 473. The application of the maxim that he who comes into equity must with clean hands does not depend upon the averments of the pleadings or the wish of counsel, but may be invoked *ex mero motu* by the court. Creamer v. Bivert, 214 Mo. 473, 485; Hantz v. Hellman, 228 Mo. 655. (e) Appellant could not offset his alleged independent and individual claim growing out of a separate matter against trust funds which he has collected and wrongfully withheld, either under the Constitution and Supreme Statutes of the Knights of Pythias, or under the law. 25 Am. & Eng. Ency. (2 Ed.), 533; Bank v. Barnum Wire Works, 58 Mich. 124; Peters v. Bank, 86 Tenn. 224; Cook County Bank v. U. S., 107 U. S. 445, 27 L. Ed. 537; Abbott v. Foote, 146 Mass. 334; Togg v. Bowman, 99 Pa. St. 376; Libby v. Hopkins, 104 U. S. 303; 21 Am. & Eng. Ency. (2 Ed.), 911; Greenville Gas Co. v. Reis, 54 Oh. St. 271; Emporium Co. v. Emrie, 54 Ill. 345; Russell v. Church, 65 Pa. St. 9. (4) The rights and powers of the officers and members of lodges superior and subordinate are regulated by their constitution and by-laws which constitute the contract of the members with each other and by the provisions of which they undertake to be bound. Bacon on Life and Accident Insurance (4 Ed.), sec. 94; Davidson v. K. of P., 22 Mo. App. 263; Smith v. Mystic Workers, 196 S. W. 62 (Mo. App.); Tuite v. Supreme Forest, 187 S. W. 137, 193 Mo. App. 619.

ALLEN, J.—Plaintiff, a fraternal order, brought this suit in equity, in the circuit court of the city of St. Louis, on September 26, 1916, against one Dalzell and

the Grand Avenue Bank. The petition alleged, in substance, that defendant Dalzell, on April 1, 1915, and continuously thereafter, was employed as "Section Secretary of Section 331" of the respondent order, in the city of St. Louis, and that his duties were, among other things, to collect premiums due plaintiff's insurance department from members of plantiff order who were insured therein, and to remit such premiums to plaintiff. It was alleged that between April 1, 1915, and the date of the institution of this suit, defendant Dalzell collected and failed to remit to plaintiff the sum of $3323.60 from such premiums; that defendant Dalzell knew that said funds in his hands were trust funds; that he deposited a part thereof in his individual account in the defendant Grand Avenue Bank; that said bank had been notified that such funds belonged to plaintiff and that they were trust funds; that defendant Dalzell was threatening to withdraw such funds from the bank and convert the same to his own use; and that defendant Dalzell was insolvent.

The petition further alleged that defendant Dalzell had in his possession certain books, records, money, checks, files, etc., which belonged to plantiff, which he refused to turn over to plaintiff, and that he was threatening to secrete and convert the same so that plaintiff could not get possession thereof; that among other property belonging to plaintiff defendant had in his office in the city of St. Louis the sum of $127.92 in currency and checks, and had in his personal possession the further sum of $1656.16 in currency, checks or certificates of deposit, which had been collected by him as premiums, and that he had refused on demand to turn the same over to plaintiff and was threatening to secrete and convert the same so that plaintiff could not get possession thereof. And it was alleged that though defendant Dalzell was notified of his discharge by plaintiff, as section secretary on September 14, 1916, he was threatening and attempting to collect further premiums from persons insured by plaintiff.

Further allegations were made as a basis for injunctive relief against both defendants, but these need not be here noticed.

The prayer of the petition was for a preliminary restraining order and a temporary injunction, restraining and enjoining the defendant Dalzell from withdrawing said funds from the defendant bank, and restraining and enjoining the bank from permitting any of the said funds to be so withdrawn; that defendant Dalzell be further restrained and enjoined from removing, secreting or converting said books, records, money, checks, files, etc., in his possession, alleged to belong to plaintiff, and that said defendant be ordered to turn over the same to the clerk of the court pending the determination of the suit; that defendant Dalzell be required to account for all premiums collected by him from persons insured by plaintiff, and be restrained and enjoined from collecting any further premiums from persons insured by plaintiff; that plaintiff have judgment against defendant Dalzell in the sum of $3323.60 with interest and costs; and for general relief.

Upon the filing of the suit the trial court issued a temporary restraining order and an order to show cause why a temporary injunction should not issue, in accordance with the prayer of the petition, against both the defendant Dalzell and the defendant Grand Avenue Bank. To this order to show cause defendant Dalzell filed a return, but it need not be here noticed. Thereafter, on October 28, 1916, a stipulation was entered into between the parties, whereby it was stipulated and agreed that the sum of $1529.52, then in the hands of the Grand Avenue Bank, and the further sum of $3.85, making a total of $1533.37, would be paid to the clerk of the court, to be held by him to abide the final determination of the suit; that the defendant Dalzell would execute a bond as security for the payment to plaintiff of the further sum of $1780.23, should plaintiff be found to be entitled thereto; and that the said money to be so paid to the clerk,

and that secured by said bond, should be made to apply on any judgment which plaintiff might obtain against defendant Dalzell in this suit; and that the restraining order theretofore made should be dissolved, and plaintiff be released from any liability, by motion or otherwise, on its injunction bond.

The terms of the stipulation having been complied with, the suit was dismissed as to the defendant Grand Avenue Bank, and proceeded against the defendant Dalzell alone, to whom we shall hereinafter refer as the defendant.

Defendant filed an "answer, cross-bill and counterclaim," as it is termed. Therein he admits that he was employed by plaintiff as section secretary, and as such secretary collected premiums due the insurance department of plaintiff, but alleges that he remitted the same to plaintiff, less the amount due him. The other allegations of the petition are denied generally. For further answer, defendant alleges that on January 27, 1916, plaintiff entered into a contract with him by which he was employed by plaintiff as plaintiff's State Superintendent for the State of Missouri, and wherein plaintiff agreed to pay him $14 for each $1000 of insurance written by him in plaintiff's "Plan A" or "Plan B" of its "Fifth Class" of insurance, and $9 for each $1000 insurance written by him in plaintiff's "Plan C" or "Plan D" of its Fifth Class of insurance; that under said contract defendant was to employ not to exceed four "field men" at a salary and expense account not to exceed $40 per week each, as a guarantee, to be paid in advance by plaintiff, each man to be paid a certain part of the commission payable by plaintiff to defendant Dalzell on such insurance as might be thus written; and that plaintiff agreed to pay defendant a minimum of $300 per month for his services as state superintendent. And it is averred that plaintiff refused to reimburse defendant for $310 paid out by him to field men, refused to pay said defendant $300 per month under said contract, and that plaintiff owes de-

fendant on his account $1760. And it is further alleged that defendant, as plantiff's section secretary, was entitled to receive, in addition to the foregoing, a commission of five per cent. on all premiums collected by him as such section secretary; that he had collected $3313.60 on which a commission of five per cent. is due him, amounting to $165.68; and that if plaintiff had complied with the said contract on his part, defendant would have earned thereunder the further sum of $1700. It is admitted that defendant has withheld the sum of $1780.23 out of funds collected by him on behalf of plaintiff.

Defendant prays judgment on the counterclaim for $3630.23, and that the court allow plaintiff a credit upon such judgment for $1780.23, the amount admittedly withheld by defendant, and that the said sum of $1533.37, held by the clerk be paid to defendant on account of said judgment.

The reply avers that the contract entered into between plaintiff and defendant was in writing, and was dated January 28, 1916. This is followed by specific denials of the material allegations of the answer and counterclaim.

The evidence for plaintiff went to support the allegations of the petition and to establish a right of recovery against defendant for the sum of $3313.60, with interest. The only question of consequence in the case pertains to defendant's right of recovery on his counterclaim.

Plaintiff introduced in evidence the written contract of date January 28, 1916. Defendant admits that he executed it. This contract recites that the "Board of Control" of plaintiff order thereby contracts with the defendant, termed therein "the superintendent," "to organize Sections of the Insurance Department, reorganize and reinstate to good standing delinquent and suspended sections, solicit membership for sections in the insurance department and take applications for membership therein and solicit reinstatement therefor," for the compensation, and within the territory, named in the contract.

The contract then provides that for all "original applications" for membership in plaintiff's insurance department, received from and through defendant during the life of the contract, within the territory mentioned, certain specified commissions will be paid to defendant, "as his full compensation for all services rendered upon this contract, and the labor and expense in connection therewith." These commissions are such as are set up in defendant's answer. The contract provides that in addition to such commissions, defendant will be paid certain "renewal commissions;" and in connection therewith appears the provison that "these renewals are not to be in any way considered in making advances to the Superintendent; that they are to be paid only when due." Another section of the contract provides that plaintiff shall have authority to retain from commissions earned under the contract such sum of money as will at all times, in the judgment of its president, "protect the insurance department against any payments or advancements made under this or any other contract."

The contract provides that all moneys collected by the defendant thereunder shall be promptly forwarded to the board. By a further provision thereof authority is given to the defendant, as superintendent, "to appoint assistants to aid him, under and in accordance with the terms of this contract," subject to the approval of the President and Board of Control; and it is provided that all assistants so engaged or employed shall only act as agents of the defendant, who alone shall be liable for their acts.

The contract further provides that no "change, alteration or amendment" thereof shall be binding unless agreed to in writing by the parties; that the contract shall be in force from the date of its execution until December 31, 1916.

The contract contains terms and provisions to which we have not referred since they are in no manner pertinent to the issue here involved.

As shown above, defendant, as a basis for his counterclaim, alleges that the contract between him and plaintiff was entered into on January 27, 1916. At the trial defendant sought to show that, though he signed the written contract of January 28, 1916, the real contract under which he operated was an oral contract entered into between him and plaintiff's president on the preceding day; and that the written contract subsequently executed was a mere sham, being executed merely in order that it might be shown to plaintiff's other state superintendents who were working under similar contracts, in order that it might appear that all such contracts of plaintiff were uniform.

The evidence shows that defendant, who lived in the city of St. Louis, became superintendent of plaintiff's insurance department, in the State of Missouri, in 1896 or 1897, and became plaintiff's "Section Secretary" in 1898; and that he continued to act in both capacities until 1916. It. appears that prior to 1915 defendant had a written contract with plaintiff with respect to the services to be performed by him as state superintendent of plaintiff's insurance department in this State. It is said that in 1915 no written contract was in force between them. It seems that plaintiff caused a written contract for that year to be prepared, but that defendant refused to sign it; that defendant continued throughout the year to act as state superintendent, as well as section secretary, and that at the end of the year a settlement was made covering the year, as to which there is no matter here in controversy.

Defendant's testimony is that early in January, 1916, plaintiff sent to him a written contract to be executed by him for the year 1916, in regard to his services as state superintendent, but that he declined to sign it; that in the latter part of January of that year he went to Indianapolis, where plaintiff maintains its principal office, where he conferred with plaintiff's president, one Wade, and also "had talks" with certain members of the

"Board of Control" of the plaintiff order. Defendant
testified that he again refused to sign the written con-
tract; and he undertook to testify that on January 27,
1916, an oral contract was entered into between him and
plaintiff's president, this contract, it is claimed, being
one under which defendant was to receive a minimum
of $300 per month as state superintendent, and whereby
plaintiff was obligated to pay the salary and expense of
"field men" to act under defendant, not exceeding four
in number. The court excluded defendant's testimony
as to this alleged oral contract, upon objections of plain-
tiff's counsel. Following a colloquy between the court
and defendant's counsel touching the matter, the court
finally said: "I will allow you to show an oral modifica-
tion of this contract (the written contract of January
28, 1916) that has been made since the signing of the
contract, but not the conversations they had leading up
to the contract." Thereupon defendant's counsel pro-
ceeded to elicit testimony from defendant as to what
was done subsequent to the execution of the written con-
tract, and introduced in evidence a large number of let-
ters passing between defendant and plaintiff during the
following months. From the testimony and these letters it
appears that defendant promptly employed a field man,
agreeing to pay him "expenses, limited to $20 a week
and $20 a week salary," notifying plaintiff thereof, and
later engaged two other field men; and that plaintiff
made certain advances to defendant on account of the
field men, and also sent defendant certain checks for
$300 each. But the correspondence shows that plain-
tiff's president insisted that the field men be employed
on a commission basis, their commissions to be deducted
from those accruing to defendant under the contract;
that plaintiff would not "pay a salary to any man in
the field," though plaintiff would make certain advances
on account of the field men, saying that this had been
agreed upon; denying also that there was any agree-
ment to pay defendant a minimum of $300 per month.
A spirited controversy arose between defendant and

plaintiff's president, owing to the fact that plaintiff charged against defendant's commissions, accruing under the contract, all advances to defendant personally and on account of field men, by reason whereof defendant's commission account appeared overdrawn. And plaintiff ultimately refused to make further advances to defendant. It is unnecessary to set forth in detail the evidence adduced by defendant touching this matter.

The trial, before the court without a jury, resulted in a judgment for plaintiff on its cause of action in the sum of $3313.60, with interest from September 14, 1916, —the date of demand upon defendant for the monies withheld by him as section secretary, totaling $3434.47; the court ordering that the fund in court, to-wit, $1533.37, be paid to plaintiff and credited on said judgment. And the court found in favor of plaintiff on defendant's counterclaim.

The first point made by appellant's learned counsel is that the trial court erred in denying appellant a trial by jury. The argument advanced in this connection is that, by the stipulation mentioned above, "the equitable questions in the case had been eliminated," leaving the case simply an action by plaintiff for the recovery of money, with a counterclaim interposed by the defendant. But obviously this contention is without merit, for the reason, if none other, that the suit as instituted was one of purely equitable cognizance; and "it is a well established rule that where a court of equity once acquires jurisdiction of a cause, it will retain it to do full and complete justice." [Holland v. Anderson, 38 Mo. 55; Quest v. Johnson, 58 Mo. App. 54; 16 Cyc. 113.] The status of the case as one in equity was in no wise changed by the stipulation or the answer. [Sprague v. Carroll, 188 S. W. 63, l. c. 65.]

The next contention is that the court erred in excluding the parol testimony proffered by defendant to show that the written contract of January 28, 1916, was not intended to be operative between the parties, but was a mere sham executed for the purpose of influencing third

persons; and to show that the real contract, under which,
it is claimed, defendant was operating, was an oral con-
tract entered into between the parties on January 27,
1916, one day prior to the date of the written contract.
As to this, we think that the ruling of the trial court was
correct. All prior negotiations between the parties be-
came merged in the written contract executed by them,
which, in the absence of fraud, accident or mistake, is
conclusively presumed to express the final agreement.
[See Crim v. Crim, 162 Mo. 544, l. c. 552, 63 S. W. 489;
Ely v. Sutton, 177 Mo. App. 546, l. c. 553, and cases cit-
ed, 162 S. W. 755; Stringer v. Manufacturing Co. 177
Mo. App. 234, l. c. 242, 162 S. W. 645; Neville v. Hughes,
104 Mo. App. 455, 79 S. W. 735; Minnesota, etc. Co. v.
Grant City Lbr. & Hdw. Co., 81 Mo. App. 255.] Many
other authorities in this state might be cited in support
of the ruling below. To permit a party to say that
he executed a written contract, but that it was a mere
sham, not intended to express the real agreement be-
tween the parties, and that the real agreement was one
contemporaneous or previously made by parol, inconsis-
tent with the writing, would be to destroy the value of
all written contracts. In this connection see England v.
Houser, 178 Mo. App. 70 163 S. W. 890, and cases cited;
Montgomery v. Schwald, 177 Mo. App. 75, 166 S. W. 831;
Citizens Bank of Pomona v. Martin, 171 Mo. App. 194,
156 S. W. 488.

Obviously the alleged oral contract upon which de-
fendant relies is inconsistent with the terms of the writ-
ten contract in vital particulars. The written contract
recites that the commissions therein stipulated to be
paid defendant shall constitute his entire compensation
under the contract; whereas it is contended that by the
alleged oral contract defendant was guaranteed a mini-
mum compensation of $300 per month. And while the
written contract authorizes the appointment of assis-
tants by defendant, these are made defendant's agents,
and not agents of plaintiff, the latter to be in no wise

responsible therefor; whereas defendant asserts that by the oral contract it was agreed that plaintiff would pay a salary to such assistants as well as their expenses.

Defendant is not standing upon any alleged subsequent oral modification of the written contract, but upon an alleged oral contract made one day prior to the execution of the written contract. The letters which the court permitted defendant to introduce in evidence do not, we think, tend to show any subsequent modification of the written contract—were that theory available to defendant. It is true that plaintiff made certain advancements to defendant on account of defendant's field men, and also to defendant personally; but the written contract plainly contemplated that advancements would be made to defendant, chargeable against his commissions, if the business done by him should justify it. Defendant's letters to plaintiff show that by April he definitely made clear his position that his original agreement with plaintiff for that year entitled him to a minimum of $300 per month, and to have the salary and expenses of his field men paid by plaintiff; but, though it appears that plaintiff afterwards sent defendant two checks demanded by him, plaintiff unequivocally denied that its obligation was other than that expressed in the written contract.

The only question remaining to be considered is that of defendant's alleged right to a commission of five per cent. on collections which he had made as section secretary, which he did not turn over to plaintiff, and to secure which this suit was brought. This item, it is said, amounts to $165.68. The laws of the order in evidence show that the "secretaries of sections" are required to forward to plaintiff's Board of Control the monthly payments and assessments collected immediately after the twentieth day of each month; and that such funds are designated as "trust funds." The laws also provide: "The full compensation of section secretaries for their services and to cover their expenses in the transaction of

the business of their office shall be five per cent. *of the amount collected and remitted by them to the Board.* Payment of such compensation shall be made to the secretary by the Board at least once every three months out of funds collected for expense purposes. No part of the collections made by secretaries shall be deducted or withheld by them.'' (Italics ours.)

Under these provisions, and in view of defendant's position as trustee with respect to these funds, we are of the opinion that the trial court was correct in ruling that defendant was not entitled to commissions on collections which he received but which he failed and refused to remit to plaintiff, as it was his duty to do; that by withholding such funds, and refusing to turn them over to plaintiff on demand, whereby plaintiff was compelled to sue in order to recover the same, defendant lost his right to receive commissions thereon. [See Folk v. Wind, 124 Mo. App. 577, 102 S. W. 1.]

The judgment should be affirmed, and it is so ordered.

*Reynolds, P. J.,* and *Becker, J.,* concur.